## MUNICIPALITY NUMBER THREE *v.* JAMES S. HART.

Taxes imposed by political corporations, to whom a portion of the powers of the government are delegated for the purposes of government and police, are not liable to seizure on executions against those corporations; nor are funds collected on judgments for taxes liable to such seizure. But sums due to municipal corporations for paving, or on bonds taken for paving, are liable to seizure.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *C. De Blanc*, *Jr.*, for plaintiff. *C. de Choiseul*, for defendant, contended

as follows :   This is an injunction taken out by plaintiffs to arrest certain sei- <span style="float:right">MUNICIPALITY</span>
zures against its property, under judgment obtained by defendant.   There was   No. THREE
no contest as to the correctness of the judgment under which the execution          *v.*
issued ; the plaintiff merely contending that the property seized was not liable   HART.
to seizure.   The injunction was dissolved in the lower court, with damages.
On the merits, the only question in controversy is, whether the effects seized
are liable to seizure.

The petition of the plaintiff classes them all under the name of *revenues*
of Municipality Number Three.   But it is contended, that this is by far too
broad a term to bring them all, if any, under the scope of the decision of this
court, in the case of *Egerton* v. *Municipality Number Three*, reported in 1st
Ann.   To simplify the enquiry, we will divide them in three classes, accor-
ding to the distinctions made in the petition of plaintiffs, and argue each in its
turn.   And 1st.   The petition names "a certain twelve months' bond given to
*Municipality Number Three*, for the sum of            dollars, at a certain sale
made of certain property belonging to the succession of *Gormley*, under a judg-
ment obtained against said succession for banquets made by this petitioner.   The
case of *Egerton* v. *Municipality Number Three*, taken in its broadest construc-
tion, only decides that *taxes* of the municipality could not be seized by its cre-
ditors.   The bond seized was clearly not obtained for a tax.   The judgment was
obtained against said succession for banquets made."

This court has decided that assessments for paving, ordered to be done by an
ordinance of a city corporation made in the exercise of its legal authority, are
not taxes.   4th Ann. 1.   In New York, churches are exempt from taxation.   A
religious corporation claimed exemption from certain assessments, under the law
in that city, similar to ours, relating to opening of streets, asserting that the bur-
then thus imposed was a species of tax ; the Supreme Court held differently.
4th Ann. 2.   *Matter of the mayor of New York*, 11 John, 80.   An impost, tax
or duty, is an exaction to fill the public coffers, for the payment of the debts and
general welfare of the country.   An assessment provided to pay the expense
of constructing bridges on causeways, etc., to be paid only by those who enjoy
the advantages resulting from such expense, is neither an impost, tax nor duty.
11 John. R.   11 M. R. 325, 333, 335.   It was therefore a mere debt due to
the municipality, which had, moreover, assumed a still more transferable form,
in the shape of a bond given in payment of the property of the succession of *Gormley*,
sold under the judgment.   It even appears, from the testimony of the treasurer
of the municipality, that the plaintiff did consider it as a negotiable instrument,
as it had once transferred it to some other of its creditors, though it subse-
quently returned to the possession of the municipality.

2d.   From the testimony on record, it appears that one of the judgments
seized, was for a fine.   This is admitted by the plaintiffs ; and it therefore stands
in the same position as the seizure above mentioned, a mere debt due to the
municipality.

3d.   The other seizures are admitted to be judgments rendered for taxes
due the municipality.   The aggregate amount of them is small, and it is in evi-
dence on the record, by the sheriff, that he has never collected a dollar under
them ; in fact, he states that the only money in his hands, (and for which this
contest was began ) is the amount of the bond first mentioned.   But even these
last, we contend, do not fall under the decision first quoted, which is merely
against the seizure of taxes.   In that case, the plaintiff had, under his execution,
garnisheed several tax payers of the municipality : the court, in substance,
decided that he could not assume the right of sovereignty belonging to the muni-
cipality, of collecting its taxes ; that it was an infringement of the franchise which
it alone could exercise.

When those taxes have been collected and put into another shape, no one will
contend that they do not stand in the same situation as any other property of the
municipality.   A novation has taken place, and they have become transferable
rights, the same as a negotiable instrument.   The municipality could not have
sold its right of taxation and collection, but it can undoubtedly sell any judgments
which it may have obtained.   This is, in fact, a transaction of every day's occur-
rence.   Were the municipality to invest its funds in building houses or buying
slaves, they would undoubtedly be liable to seizure, although the proceeds
of taxes.   To argue otherwise, would be at once to say, that no property of the
municipality is liable for its debts ; for it is all the proceeds of taxes, fines, or
contracts, as in the first instance.   If none of its property is liable to seizure,

then every judgment given against it is a mockery, for there is no mode of enforcing the judgment of the court, except by a writ of *distringas*. The sentence of the court would be contemptible without the power to enforce. Black., vol. 1, c. 7, p. 242.

Under all these views of the case, we think we are clearly entitled to an affirmation of the judgment of the lower court, with the damages therein given, according to the 3d section of the act of March 25th, 1831, p. 102. *Dorsey* v. *Vaughan*, 5th Ann. 155.

We wish, however, to call the attention of the court to the fact, that the main contest, in reality, is, for the bond given in payment for property sold under the judgment against the succession of *Gormley;* and that its amount is all the money that has ever, or probably ever will, come into the hands of the sheriff; that amount, however, being nearly sufficient to pay the whole judgment of defendant against Municipality Number Three. Our case not coming at all, as we believe, in conflict with the decision in *Egerton* v. *Municipality Number Three*, we would be willing to rest it here.

But such dangerous latitude has of late been given to this decision, such utter faithlessness and bold disregard of its obligations has been displayed by Municipality Number Three, by the extension and perversion of the original meaning, that we deem it a duty we owe to the public, to this court, and to ourselves, to seize the opportunity we now have of putting the whole matter before the court, that it may review the decision and restrain it within its original bounds; and we cannot do so more fully than by giving the reasons for his judgment, given by the judge of the lower court. "In the case of *Egerton* v. *The Third Municipality*, 1st Ann. 440, the learned judge who delivered the opinion of the court, said in the conclusion, 'On first view of this question, there is something very repugnant to the moral sense in the idea, that a municipal corporation should contract debts, and that, having no resources but the taxes which are due to it, these should not be subjected by legal process to the satisfaction of its creditors.' Such is the impression made on the mind, and notwithstanding I have read that decree over and over again, my first impressions remain, and I cannot bring myself to render a judgment sustaining an injunction against an honest debt of the municipality established by a judgment; it is a dishonest and immoral act on the part of the corporation, and no reasoning can justify it."

The sovereign is not suable. Black., vol. 1, bk. 1, chap. 7, p. 242, says : "The law ascribes to the king the attribute of sovereignty or preëminence;" and further, "Hence it is, that no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him, for all jurisdiction implies superiority of power and authority; to try, would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court has power to command the execution of it; but who, says Finch, shall command the king?"

This principle is recognized in our own Constitution. Under the Constitution, as first adopted, a clause in it was supposed to give the courts of the United States jurisdiction in a suit between a State and citizens of another State; such was the decision in the case of *Chisholm* v. *The State of Georgia*, 2 Dall. 437. But the States, alarmed for their sovereignty, obtained an amendment which settled this question. The general government of the United States is sovereign; the State of Louisiana is sovereign; but the Third Municipality is not sovereign, nor the city of Lafayette, nor Donaldsonville, nor Baton Rouge, nor the town of Covington, nor is the governor sovereign, nor the Legislature, nor the Supreme Court, although their salaries cannot be seized. The sovereign in this country, is the people, represented by the government they have created and constituted, as their agent, for that purpose. The whole government, and not any separate department. Sovereignty is from its nature, undivided; it cannot be split and separated. There begins and ends this difficulty. The sovereign cannot be coerced; all others are subject to the law, which is for that reason, by a figure of speech, often termed sovereign. "It is obligatory on all the inhabitants of the State; the foreigner whilst residing there, and his property within its limits, are subject to it." C. C. art. 9. "Corporations legally established are substituted for persons." C. C. 424. "They may make valid contracts, obligate others and obligate themselves." At common law, they are called civil persons, in opposition to natural persons, of which they are comprised. They are treated of, in the code, under the title of persons. Bk. 1st. "They may make valid contracts, obligate others, and obligate themselves." And art.

248 declares, "its creditor can seize no other effects, but such as belong to the corporation." From which, it strikes me, a very strong inference is to be drawn, that such effects are liable.

To my mind it is inconceivable, that whilst the Legislature were thus defining the capacities and incapacities of corporations, including "the corporations of cities,' in a code which, as above, subjected all the inhabitants and it to the law, which law declared the property of the debtor, the common pledge of his creditors ; (they had not used the word citizen or inhabitant, nor man, nor individual, but they used the word *debtor*, large enough to cover all persons treated of in this code, and not expressly excepted ; ) I say, it is incomprehensible to me, that the Legislature could have overlooked so prominent a principle, if they had intended to sanction so extraordinary a pretension ; and it is extraordinary, that they again overlooked it, when exempting the salaries of officers from seizure. So far from believing in such an intention, it is my belief, that if such a measure were proposed in that body, it would be scouted.

It is said, that the Legislature intended to give the municipality the means of preserving it, and undoubtedly it is so ; and as, undoubtedly, I think they did, so they gave it the power of self government and an unlimited power of taxation ; let it use that power and pay its debts, or let it use a more rare, but much less expensive article, prudence in going into debt ; and I think it will be found, the Legislature has afforded to them, not only the means of sustaining itself, but ample and liberal means.

The Creator made the natural man with the means of sustaining himself ; but if, by extravagance and debauchery, he ruins his constitution, his punishments follow, and his means of sustaining life are impaired or destroyed ; and so is it with the corporation, to which abundant power and means have been given, and abused. It may, however, be said, that the right is not claimed to exempt the corporation from suit, or from seizure of its other property ; it is only the uncollected taxes which are exempt. Let the reader look back to the quotation from Blackstone : "The sentence of the court would be contemptible, without the power to redress." The power of even the Supreme Court may be made contemptible by such means ; its power to coerce a corporation, is by the proper writ of *distringas*, which directs the sheriff to seize their estate, to receive the rents, issues and profits ; if not so, they are above the law. The learned judge Wilson, in the case of *Chisholm* v. *The State of Georgia*, remarked : "A State, like a merchant, makes a contract ; a dishonest State, like a dishonest merchant, wilfully refuses to discharge it. The latter is amenable to a court of justice ; shall the former be permitted to assume a new appearance, and insult him and justice, by declaring : 'I am a sovereign State ?' Surely not ; before a claim so contrary to the general principles of right and equity be sustained, the person, natural or artificial, should be well known and authenticated." Judge Wilson was one of the most accomplished lawyers of that day, and a man of distinguished moral worth.

The modern doctrine is, that the powers of corporations are to be strictly construed. *Head* v. *The Provincial Insurance Company.* 2 Cranch, 127. 4 Wh. 636. 4 Peters, 152. In the case of *Dartmouth College*, Chief Justice Marshall said ; "Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or incidental to its very existence."

It is contended, that the exemption from seizure is thus necessary, and it is precisely here, as I conceive, the fallacy exists. The power of raising the funds necessary for its support is essential to its existence, but when these funds have been improvidently squandered, it is not necessary the course of justice should be stopped or impeded. If the Legislature had passed such a law, it strikes me, it would be unconstitutional, it would impair the obligation of contracts. But whether this be so or not, I am of opinion, that when an unrestricted power of taxation is given, the Legislature is clearly acquitted of the charge of not giving it the means necessary to its existence. Let them use that power, but don't mock the public, by telling them that it is necessary to the existence of the Third Municipality, that the administration of justice should be suspended as to them, and the decrees of our courts made powerless. It were far better the municipality ceased to exist.

The judgment of the court was pronounced by

EUSTIS, C. J. This appeal is taken by the Third Municipality, from a judgment of the Court of the Fourth District of New Orleans, dissolving an injunc-

tion obtained against the defendant's proceedings, under an execution on a judgment he had recovered against the municipality, and amercing the plaintiff in injunction in ten per cent interest, and twenty per cent damages, on the amount of the judgment enjoined.

The ground upon which the injunction was asked for is, that the property seized in execution is not liable to seizure under the writ.

The objects seized appear to be: 1st, a bond, in favor of the municipality, received from the succession of *Gormley*, in satisfaction of a judgment against the succession for side-walks made in front of the property of the succession; 2d, a judgment against *Lacroix*, for a fine; 3d, certain judgments recovered for taxes; and 4th, money in the hands of a constable, received by him under judgments for taxes.

In the case of *Egerton* v. *The Third Municipality*, 1st Ann. 435, we held, that the taxes due to the municipality could not be seized under execution on a judgment against the corporation. By far the greater portion of the sovereign power of the State is, under our Constitution and laws, exercised by political corporations, which have for their object the administration of the different civil divisions of the territory of the State, to whom part of the powers of government are delegated to that effect. The taxes imposed by those municipal bodies, for the purposes of government and police, with which they are charged, are not liable to seizure, for the same reasons that the taxes imposed by the State are not. This decision was rendered in 1846, and has, on more than one occasion, been referred to, and acted upon by this court. The reasons on which it was based are given at length in the opinion: a repetition of them would be out of place; and we only feel ourselves called upon to state, that there is nothing in the written opinion of the learned judge of the district court, against the decision in *Egerton's* case, which was not fully presented and considered before that decision was made.

We think, therefore, that the sums of money in the hands of the constable, being the proceeds of taxes in transit to the treasury, and the judgments for taxes, are not liable to be seized under the defendant's execution.

This case has been brought before us without any proper preparation of the evidence, on the part of the municipality; and it fails to show, that the bond can be distinguished from any ordinary debt due by *Gormley's* succession to the municipality. It is, therefore, not exempt from seizure, under the rule in *Egerton's* case. That rule, we think, applies to the judgment for the fine incurred by *Lacroix*, for the violation of a municipal ordinance. The reasons for the exemption from seizure of the fine for the violation of a municipal ordinance, enacted in furtherance of a law of the State, are identical with those which establish the exemption for taxes. Domat, Droit Public, lib. 1, tit. 5, sec. 1, no. 5 and 6. Domat's Civil Law, lib. 4, tit. 2, sec. 2, no. 5 and 7: Translation, 2299, 2301.

The judgment of the district court, dissolving the injunction, is affirmed, so far as it relates to the seizure and sale of the *Gormley* bond, or the proceeds thereof, amounting to $334; and in other respects, amended, so that the defendant, *James S. Hart*, recover from the municipality and *P. S. Wiltz*, the surety, *in solido*, ten per cent interest thereon from the 25th of March, 1850, and twenty per cent damages; the plaintiff paying the costs below, and the defendant those of this appeal.