A. & F. REMY *v.* MUNICIPALITY NUMBER TWO et al.

As a general principle, a plan annexed to a petition should be used to explain anything that is am-
biguous or unexplained in the petition, but it cannot control a written description of the metes
and bounds of the land claimed in which there is nothing ambiguous.

Previous to the compromise of September, 1820, between the city and various claimants of the batture
of the faubourg St. Mary, the levee followed the outer edge of Tchoupitoulas street, which was the
original high road along the river bank, and lots for private occupation could not have been law-
fully laid out upon the soil of Tchoupitoulas street.

The Act of the Legislature of the 21st of March, 1850, authorizing the city of New Orleans to lay out
and establish lots upon the batture in front of the faubourg St. Mary, raised an interdict which the
Legislature had imposed by the Act of March 8th, 1836, upon the private occupation of the batture
outside of New Levee street.

Until the Act of the Legislature of 3d of April, 1853, the corporation had the exclusive right to deter-
mine where and to what extent the riparian proprietors might take possession of the batture.

The division of the batture outside of New Levee street as far as Front street, into streets and
squares, was not an expropriation of the property so far as the streets were concerned, of which
the riparian proprietors had never been in possession.

The jury to be empannelled under Art. 2608 of the Civil Code, to estimate the value of property to
be expropriated, should have a personal knowledge of the value of real estate in the vicinage ;
they act as experts, and though it is proper, especially if they request it, that they should be aided
by the opinions of witnesses, a personal examination of the premises by the jury in a body, after
it is empannelled, should be a feature of every proceeding under that Article of the Code.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J. Tried
by a Jury. *Durant & Hornor,* for plaintiffs and appellants. *J. J. Michel,*
for defendants.

BUCHANAN, J. The plaintiffs appeal from the verdict of a jury of freeholders,
summoned, under the 2608th Article of the Civil Code, to assess the value of
their property taken for the public use.

The first question presented is, whether the soil of Tchoupitoulas street in
front of the lot purchased by the father of plaintiffs from *Théard,* in 1805, is
included within the land recovered by plaintiffs of defendant by judgment of
this court rendered in February, 1856. 11 An. 148.

The petition describes the land claimed by plaintiffs as follows : " A certain
tract or lot of ground commencing at New Levee street, near St. Joseph street,
being sixty feet in width and running to the river, being part of the batture in
that neighborhood ; that the yellow coloring on the map or plan herewith filed
as part hereof, shows the tract or land belonging to petitioners ; petitioners re-
serving to themselves, however, the right to file a more accurate description of
the property by them claimed, and to correct any error into which they may
have fallen in reference thereto."

The decree of the court is, " that plaintiffs be recognized as the true and
lawful owners of the property claimed by them, to wit: that portion of the
batture lying and being in front of the lot described in the petition, to wit, a
lot of ground situated in the faubourg St. Mary, being numbered 64," &c.

Plaintiffs pretend that the words of their petition, " commencing at New
Levee street," are controlled by the plan annexed to and made part of the pe-
tition on which the whole of the original lot No. 64 of the faubourg St. Mary,
acquired from *Théard,* as well as all the intervening space between that lot
and the river, is represented colored yellow. But this construction of plain-
tiffs' claim is clearly inadmissible. For the yellow portion of the plan includes

the lot No. 64 itself; and the petition sets forth, that the ancestor of plaintiffs sold the lot in 1810.

But although, as a general principle, a plan annexed to a petition should be used to explain anything that is ambiguous or unexplained in the petition, yet it cannot control a written description of the metes and bounds of the land claimed in which there is nothing ambiguous. It may very well be that the party merely intended, by coloring the intervening space between the lot No. 64 and New Levee street the same as he colored the lot itself and the space between New Levee street and the river, to present to the eye the connection between the lot in question and the batture outside of New Levee street, as claimed in the petition.

Besides, the sale from *Antoine Remy* to *Joseph Tabony*, of January 17th, 1810, referred to in plaintiffs' petition, and given in evidence by them as a muniment of their title, proves an alienation by the ancestor of plaintiffs, of whatever title he had to the soil of Tchoupitoulas street. The description of the land conveyed by that sale, is as follows : " Un terrain, situé au faubourg Ste. Marie, designé sous le No. quarante, de soixante pieds de face à la levée, sur deux cents vingt-six pieds de profondeur."

In this description two things are to be noted :

1st. *Remy* sells *to the levee.* Now it is a matter of historical and local notoriety, that previous to the compromise of September, 1820, between the city and various claimants of the batture of the faubourg St. Mary, the levee followed the outer edge of Tchoupitoulas street. It is so represented on the engraved plan of the city of New Orleans and its faubourgs made in the year 1815, by *J. Tanesse*, city surveyor.

2d. *Remy* sells the lot *with a depth of two hundred and twenty-six feet,* whereas he had purchased from *Théard* with a depth of 160 feet. The additional sixty-six feet conveyed to *Tabony*, can be nothing else than the width of Tchoupitoulas street, in front of the lot No. 64, as originally bounded in the plan of the faubourg by *Laveau Trudeau* referred to in the deeds from *Gravier* to *Théard*, and from *Théard* to *Remy* and *Effingham*.

Another and more important question forces itself upon our attention, in connection with the evidence upon which the jury has found the verdict of which the plaintiffs complain.

The same draughtsman who made the plan annexed to the petition, has made another plan which is submitted to us, as a pictorial representation of the *locus in quo*. Both plans depict a prolongation of the side lines of lot No. 64 of the original plan of the faubourg St. Mary to the river Mississippi. On both, the space embraced within the prolongation of those lines is intersected by four streets, Tchoupitoulas, New Levee, Fulton and Front, and is occupied in a portion of its length by St. Joseph street. But on the plan last made, the soil occupied by these five streets, is cut up into thirty-one lots, of which four occupy Tchoupitoulas street, three New Levee street, three Fulton street, three Front street, and eighteen St. Joseph street. It is upon this arbitrary and fanciful configuration of lots in impossible situations, blocking up all the public thoroughfares, that the extravagant estimations of the plaintiffs' witnesses before the jury of freeholders were based. The slightest reflection shows that this basis of estimation is false, and only calculated to lead the jury into error. For, not to speak of the absurdity of private occupation of Tchoupitoulas street, the original high road along the river bank, and for several generations

REMY
*v.*
2D MUNICIPALITY.

the only means of communication by land between the city and the country above, it would be entirely to ignore the sovereign power of the State, the administrative power of the city corporation as settled by many adjudged cases, and the no less well settled rights of riparian proprietors themselves upon alluvial deposits of the river within the limits of this city, to suppose that lots *can* be laid out for private occupation upon the soil of the streets which the city of New Orleans was authorized by the Act of the Legislature of the 21st of March, 1850, (Session Acts, page 197,) to lay out and establish upon the batture in front of the faubourg St. Mary. By that Act, the Legislature raised an interdict, which it had imposed by Act of March 8th, 1836, upon the private occupation of the batture outside of New Levee street; sanctioned a plan prepared by *George T. Dunbar*, city surveyor, for the extension of old streets, (including St. Joseph street,) and the creation of new streets (Fulton and Front) upon the said batture; and formally ordered, by the third section of the Act, that the batture between the river and the street to be laid off fronting the river (Front street) shall be left open, and so kept for the accommodation of the public and the convenience of commerce. Yet the figurative plan submitted to the jury in the court below, represents the streets laid out by *Mr. Dunbar* by order of the city council, and sanctioned by the sovereign power of the State in 1850, as susceptible of private ownership and occupation in 1856.

The administrative control which the city council had over the alluvial deposit, was settled in the cases of *Municipality Number Two* v. *The Orleans Cotton Press Company*, and *Pulley & Erwin* v. *Municipality No. Two*, in 18th Louisiana Reports. The corporation had the exclusive right to determine when, and to what extent, the riparian proprietors might take possession of the batture.

Until the Act of 30th April, 1853, the riparian proprietor was bound to await patiently the action of the corporation, and was not allowed to take the initiative, in limiting or terminating the public occupation of the batture.

The judgment in the petitory action instituted by the plaintiffs against Municipality Number Two, cannot be interpreted as having recognized a right in the plaintiffs to the private occupation of the whole of the batture in front of lot No. 64, without regard to the administrative power of the city corporations over the batture and landing, or to the action of the State and of the city in relation to this batture in the year 1850, previous to the institution of the plaintiffs' suit, or the steps taken by the city authorities for the opening of streets on the batture, in furtherance of such legislative and municipal action. In our view of the case, the division of the batture outside of New Levee street, as far as Front street, into streets and squares, was no expropriation of the plaintiffs, so far as the streets were concerned, for they had never been in possession of the soil of those streets, nor indeed of any part of the batture. Such division was, in fact, a restriction of the public use, which had previously extended to the whole batture, to the comparatively small portion of the batture covered by the streets; and it does not admit of doubt, that the reservation of streets, as avenues of communication, was necessary (in the words of the Statute of 1850,) to the accommodation of the public and the convenience of commerce. We would, therefore, be inclined to the opinion, that the plaintiffs were entitled to very little, if any, compensation for the public use of the soil of the streets on the batture; and thus thinking, cannot favor the application

of the appellants to remand the cause for the purpose of having the compen- REMY
sation increased ; neither can we reduce the amount of the judgment appealed 2D MUNICIPALITY.
from, inasmuch as the appellee, the city, has not asked for an amendment in
its favor.

There is a point of practice under the Article 2608 of the Civil Code raised
by a bill of exceptions which perhaps requires notice, although not strictly
necessary to the decision of this case. The jury empannelled under that Ar-
ticle, is a jury of a peculiar character. It must be composed exclusively of
freeholders, and the members who compose it are evidently supposed and in-
tended by the Legislature, to have a personal knowledge of the value of real
estate in the vicinage, which entitles them to rely upon their own opinion, in
forming their judgment; although, doubtless, it is proper that their own
opinion should be aided, especially if they request it, by the opinions of wit-
nesses. Such a jury are, in truth, experts; and we suggest that a personal
examination of the premises by the jury in a body, after it is empannelled,
should be a feature of every proceeding under this Article of the Code.

Judgment affirmed, with costs.

SPOFFORD, J., concurring. I am of opinion that the plaintiffs' right to a fair
indemnity for that portion of their batture property heretofore converted into
streets, is not an open question between these parties. See the case between
the *Remys* and the *Municipality*, reported in 11 An. 148, and the opinion of
this court pronounced December 22d, 1856.

But I am of opinion that the freeholders whose duties are prescribed by the
Article 2608 of the Code, are vested with a larger discretion than ordinary
juries. They are not bound by the opinion of witnesses, but may make their
own appraisement, either upon view of the property, or after hearing and weigh-
ing such evidence as the court thinks to be legally admissible. The District Judge
in this case stated in overruling the motion for a new trial, that the jurors declar-
ed themselves to be perfectly familiar with the property in question. They
were far better able than we are to appreciate what it was worth ; and there is
no evidence of prejudice or passion. I do not find that the Judge committed
any such errors as would require the case to be remanded, and, therefore, con-
cur in the judgment.

VOORHIES, J., dissenting. The plaintiffs, under the former judgment of this
court, must be considered as the lawful owners of " a lot of ground situated in
the faubourg St. Mary, being numbered 64, and having 60 *feet front on the
river and* 180 *feet in depth*, with a reservation in favor of the city to use for the
purposes of administration such part of it as may be subject to the servitudes
established by law on lands fronting on the Mississippi river, within the limits
of the city." 11 A. 148.

The use of the bank of the river is, in my opinion, the only servitude estab-
lished by law on the property in question. In the exercise of it, it is clear
that the plaintiffs cannot be placed on a more unfavorable footing than that of
any other front proprietor. This right, however, does not appear to be the
subject matter in contestation. Neither do I understand our former decision
to be at variance with any of the principles laid down in the decision of the
Orleans Cotton Press case, 18 L. R. 122.

The question as to the plaintiffs' right to a fair price for that portion of their
property which has been appropriated to public use, must be considered as af-

REMY
v.
2D MUNICIPALITY.

firmatively settled by the decision of this court, in which the case was remanded merely for the purpose of ascertaining such price by submitting the matter to a jury of freeholders in accordance with Article 2608 of the Civil Code.

The record contains bills of exceptions which present several questions to the consideration of the court. The Judge *a quo* erred, in my opinion, in refusing to charge the jury as requested by the appellant's counsel, that in assessing the amount to be paid to the plaintiffs they were to be guided by the testimony of the witnesses. On the contrary, he charged that they were not bound to consider it, if not disposed to do so, "*but might disregard it altogether, and decide on their own notion unaided by it.*" I do not think the law authorizes the conclusion, that greater powers are conferred on juries convoked under the Article of the Civil Code to which I have already alluded than on ordinary juries. It must be evident that if such powers were intended to be conferred, as those assumed by the Judge *a quo*, a trial would then amount to a mere idle and vain ceremony; indeed, it would only be necessary to obtain the report of twelve freeholders in such cases, *founded on their own notions*, without putting the parties to the trouble and expense of a trial. But I feel fully persuaded that a verdict rendered by such a jury must, as in all other cases, be founded on legal proof. It is true in arriving at a conclusion they may consider facts coming within their own knowledge, but such facts must be disclosed on the witnesses' stand. For in the exercise of its revisory powers, in order to act understandingly, this court must necessarily be put in possession of all the facts of a case; else the right of appeal would be a mere shadow.

On the other points I am inclined to think the Judge did not err to charge the jury as requested by the appellants' counsel.

I am, therefore, of opinion, that the judgment should be reversed, and the case remanded for a new trial.