## Case No. 10,183.

### NEW ORLEANS v. MORRIS.

[3 Woods, 115.][1]

Circuit Court, D. Louisiana. Nov. Term, 1877.

MUNICIPAL CORPORATIONS—ALIENATION OF PUBLIC PLACE — BATTURE IN FRONT OF NEW ORLEANS —LEASE—CONSTITUTIONALITY OF ACT ABOLISHING FIERI FACIAS AGAINST CITY.

1. As a general rule a public place is inalienable except by the sovereign.

2. But a public place, which is a portion of the batture in front of the city of New Orleans, has a distinctive quality impressed upon it, and may be withdrawn from the use of the public by the city.

3. The leasing, by the city, of a portion of the batture for a market bazaar, for a term of ten years, for a certain rent reserved, is a withdrawal from public use of so much of the batture as is included in the lease.

4. An act of the legislature of Louisiana abolished the writ of fieri facias for the enforcement of judgments against the city of New Orleans, and declared that the effect of the judgment should be limited to fixing the amount of the plaintiffs' demand, and that said judgment should be registered and paid out of any money in the city treasury designated for its payment, and, if none were designated, that the city council might, if they deemed it proper, make an

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

appropriation for its payment. *Held*, that the act was inoperative as to an antecedent debt, because it impaired the obligation of the contract.

[Cited in Hart v. City of New Orleans, 12 Fed. 294; Canal & Claiborne Streets R. Co. v. Hart, 114 U. S. 662, 5 Sup. Ct. 1132.]

5. Said act is not made obligatory upon the courts of the United States by section 916 of the Revised Statutes.

[This was a bill in equity by the city of New Orleans against John A. Morris.] Motion for injunction based on amended bill.

B. F. Jonas, City Atty., for complainant.
Thomas J. Semmes, for defendant.

BILLINGS, District Judge. This case is before me upon an amended bill for an injunction to restrain the levying of an execution issued upon a judgment on the law side of the court. The grounds urged for the injunction in the original bill have already been passed upon. See City of New Orleans v. Morris [Case No. 10,182]. In delivering my opinion on refusing the injunction on the first hearing, I stated that the character of the title of the city to the land was not disclosed. Such disclosure is made by the amended bill. The two additional grounds set up in the amended bill will now be considered. 1. That the land upon which the bazaar market is built is a locus publicus, and is, therefore, inalienable and exempt from seizure. 2. That no execution can issue upon a judgment against the city of New Orleans rendered in the circuit court of the United States sitting in this district.

As to the first ground, that the land upon which the bazaar market is built is a locus publicus, and is, therefore, inalienable and exempt from seizure: The bill alleges that this land is a part of the batture or public levee belonging to the city of New Orleans, and dedicated to the public use. According to the allegations of the amended bill, therefore, the fee is in the city of New Orleans, subject to the servitude or use, for the public. Three things, then, are determined, so far as this case is concerned, with reference to this land; that the fee is in the city; that it is a public place, and that it is a part of the batture.

Judge Martin, in the case of Morgan v. Livingston, 6 Mart. [La.] 215, thus defines "batture": "In its grammatical sense as a technical word, and, we believe, in common parlance, it is then an elevation of the bed of the river under the surface of the water, since it is rising towards it. It is, however, sometimes used to denote the elevation of the bank when it has risen above the surface of the water, or is as high as the land on the outside of the bank." In this latter sense it is synonymous with "alluvion," which is defined to be an insensible increment brought by the water. It means, in common law language, land formed by accretion.

There is no doubt of the correctness of the general proposition, that a public place is in-alienable except by the sovereign, but a public place which is a portion of the batture, according to the well settled jurisprudence of this state, has a distinctive quality impressed upon it, and may be withdrawn from the use of the public by the city. This qualification is seen to be a public necessity when we consider that by the action of the vast stream which half encircles the city, the levees may be so widened as that unless a portion of them were used for buildings, and the inhabited city extended over them, the city itself would possibly be left at an inconvenient distance from the river. Accordingly we find, both in the decisions of the highest tribunal of the state, and in the act of the legislature, a clear recognition of the authority of the city to withdraw from the public use any portion of the batture which it deems no longer necessary to be held for that purpose.

In the case of Remy v. Municipality No. 2, 12 La. Ann. 502, the court say: "The administrative control which the city council has over the alluvial deposit was settled in the case of Municipality No. 2 v. Orleans Cotton Press [18 La. 122], and in Pulley v. Municipality No. 2, Id. 278."

The corporation had the exclusive right to determine when and to what extent the riparian proprietor may take possession of the batture. Until the act of the 30th April, 1853, the riparian proprietor was bound to await patiently the action of the corporation, and was not allowed to take the initiative in limiting or terminating the public occupation of the batture. In the case of Remy v. Municipality No. 2, 15 La. Ann. 657, the court say: "It is recognized by many decisions that the city has, by law, the administration of the batture, and until the act of April, 1853, the exclusive right in determining when and to what extent the riparian proprietor might occupy the batture or alluvion within the limits of the corporation." The legislature has spoken with equal clearness upon this subject. Act No. 333 of the Acts of 1853, provides: "That whenever any riparian owner of property in the incorporated towns and cities in this state is entitled to the right of accretion, and batture has been formed in front of the said owner's land, more than is necessary for the public use, which said incorporation withholds from the owner, he shall have the right to institute suit against said corporation for so much of said batture as may not be necessary for the use of commerce and navigation, and for the necessary public highways and other public uses. And if it be determined by the court that any portion of said batture be not necessary for the public uses above mentioned, the court shall decree that the said owner is entitled to said property, and compel said corporation to permit him to enjoy the use and full ownership of such portion of said batture." It is to be observed that the terms of this act do not directly apply to a case where, as here, the city is the riparian owner. It provides

that the riparian owner shall have the right to bring suit and have it determined whether and to what extent the batture is not necessary for the public use, and to such an extent he shall be entitled to the use and full ownership of it. This act applies to cases where the "said corporation withholds from the owner." Now, if upon a demand being made by the owner, the city should assent to his taking the portion claimed, it is clear that the legislature designed that he should so take it. For they could not have intended that a party should be placed in a worse position, where the city assented to his taking what he claimed than would be a person from whom the city withheld it. If the legislature intended, as they clearly did, to give the city the right to withdraw from public use any portion of the batture where they themselves were not the riparian proprietors, can it be doubted that they believed the city to have that right where she herself was the riparian proprietor? The case of New Orleans, M. & C. R. Co. v. City of New Orleans, 26 La. Ann. 478, has an important bearing upon the question here. True it is that that case was with reference to a portion of the batture above Canal street, where the city obtained the title by grant under a compromise. But the city could have no more under these circumstances than the fee, which, under the pleadings, it has here. At page 484 the court says: "If it be urged that the third section of said act of 1850 required the portion not then laid off into streets to be kept open forever for commerce, the answer is that Act No. 333 of 1853 authorized the withdrawal therefrom of such as may not be needed for public uses, and this has been done by the city." Again the court says: "But the title of the said parties vested by the notarial act of June, 1851, is, we think, in the municipality which then took the place of the former owners, with all their rights, including the right to bring into commerce such portions as might become necessary for public use."

It may well be doubted whether the city could, under any system of pleading, be allowed to change the attitude on this point which she assumed in her original bill. The city then had the right to withdraw this property from the use of the public and to bring it into commerce. Has it done so? The city, by its Ordinance No. 1538, ordained as follows: "Whereas, the vacant space of ground situated in the Second district, and bounded by the beef market, red stores, Peters street and the levee, has become almost worthless to the city, and a source of constant annoyance to the authorities; and, whereas, the said vacant space could be made the means of producing larger revenues to the city by the erection of a bazaar market; therefore, be it resolved, that the city auctioneer be, and he is hereby authorized and instructed to adjudicate, after ten days' notice in the official journal, to the highest bidder or bidders, a contract for the erection of a bazaar market and the collection of the revenues of the same for the term of ten years, on the vacant space bounded by the beef market, red stores, Peters street and the levee, Second district, the market to be erected in strict accordance with plans and specifications to be furnished by the city surveyor; said market and improvements thereto belonging to revert to the city of New Orleans at the expiration of said lease, without cost or indemnity to the lessor." Under this ordinance the lease was executed, and the lessees went into possession. The rent has been paid for the full period of ten years. It seems to me that this is as effectively withdrawing from public use property which is no longer necessary as could be done by the decree of any court at the suit of a riparian proprietor, and that such withdrawal so made is sanctioned by the legislature and by the supreme court. It follows inevitably that the city, by withdrawing this property from the public use, has changed its destination and its capacity to be alienated. The servitude of the public was lawfully terminated. It ceased to be a public thing, and became, so to speak, the private property of the city. Rev. Civ. Code, art. 458. Nor does the argument avail that in the progress of time this property may become necessary for the public use, for according to the present charter (Acts of 1870) they have the power of causing the expropriation of all property needed for any public use.

It is next claimed that no execution can issue upon a judgment against the city of New Orleans rendered in the circuit court of the United States sitting in this district. The argument in behalf of the city upon this point is briefly this: The law of congress in common law cases in the United States courts has adopted the law of the state with reference to executions, and the law of the state prohibits any execution in suits where the city is judgment debtor. The law of congress, found in section 916 of the Revised Statutes, is as follows: "The party recovering a judgment in any common law cause in any circuit or district court shall be entitled to similar remedies upon the same by execution or otherwise to reach the property of the judgment debtor, as are now provided in like causes by the law of the state in which such court is held." The act of the state legislature upon which the exemption is claimed is Act No. 5, passed at a special session of the legislature in 1870, p. 10. The title of the act is as follows: "An act to limit and restrict the power of courts to issue orders, writs of mandamus and fieri facias against the city of New Orleans and the officers thereof." Section 1 prohibits any court having authority or jurisdiction to allow, order, hear or entertain any writ or order of mandamus, or any order or proceeding against the comptroller, deputy comptroller or any auditing officer of the city of New Orleans, the object of which shall be,

either directly or indirectly, to obtain or compel said comptroller or deputy comptroller or auditing officer to deliver or issue any order or warrant, etc.; or against the treasurer or assistant treasurer, or any officer charged with the disbursement of the moneys to enforce the payment of money claimed to be due from New Orleans, but that the proceeding must be against the city itself and not against any branch, department or officer thereof. Section 2 abolishes the writ of execution, or fieri facias, to enforce the payment of any judgment, and provides, that the effect of the judgment shall be limited to fixing the amount of the plaintiff's demand; said judgment shall be registered in the office of the comptroller of the city, and that the comptroller, to pay the same, may draw his warrant against any money that there may be in the treasury designated and set apart for the purpose of paying such judgment. Section 3 provides, that in case there is no money to pay the judgment, the common council shall have power, if they deem it proper, to make an appropriation. If this act were to be viewed by this court as a state tribunal would be bound to view it, it would be liable to objections which impress me as serious.

In the first place, as was urged in the argument, it has been held by very high authority that any change made in the remedy which takes away the substantial right of a party to gain by his suit, that to which at the time of the making the contract he was entitled, impairs the obligation of the contract itself. The city of New Orleans at the time this contract was made; had impressed upon it by express statute, the capacity to be sued. The capacity to be sued carries with it not only the right to bring the city into court and recover the judgment, but the right to enforce that judgment. Lord Coke, in the Reports (part 5, p. 89), defines an execution upon a judgment, to be the "life of the law," and again, at page 91, he says, "which (executions) are the fruit and the life of every law." Writs of fieri facias may be said to be universally the incident of a judgment for the recovery of money, which a court renders after the hearing of the case, and without them the proceedings would be for the most part vain; and when the creditor gives credit to the city upon the faith of its having the capacity to be sued, it seems to me that the argument is very strong in favor of the capacity to be sued, including all the proceedings necessary to take compulsorily the property of the judgment debtor.

An analysis of the act of the legislature of Louisiana with reference to the city of New Orleans shows that there can be no effective compulsion; there can be no writ of mandamus upon any of the officers of the city, no writ of execution against the city. The judgment creditor is limited to taking either what is found in the treasury already appropriated, or which the common council may thereafter. if they deem proper, appropriate for the payment of the judgment. It seems to me that the chief part of the capacity of being sued, so far as the creditor is concerned, is by this act annulled. But it is not necessary for me to pass upon this question; for in my opinion the practice act of congress has not adopted this exceptional law with reference to the city of New Orleans. When congress says that the judgment creditor in the federal courts shall be entitled to similar remedies by execution or otherwise to reach the property of the judgment debtor as are now provided in like cases by the laws of the state in which the court is held, it clearly means this: That the remedies by execution or otherwise upon judgments in the federal courts shall be the same as are provided by the laws of the state for judgments in suits of the like nature; that is to say, in order to determine what remedy the judgment creditor shall have, the court in the first place examines the judgment, and sees what is the nature of the thing recovered, whether it be money or land, or a right to some office or to have some act done that should be enforced by a mandamus, and that then in the second place the creditor shall have the same remedies to enforce his judgment in the federal court as he would have in the state court, in judgments of a like nature, or that belong to that class. The judgment here is a judgment for the recovery of a sum of money. If we turn to the statutes of Louisiana we find (Code Prac. art. 641) "that when the judgment orders the payment of a sum of money, the party in whose favor it is rendered may apply to the clerk and obtain from him a writ of fieri facias against the property of his debtor." This then is the remedy in the state courts provided by the state law for cases like this. It is true that the legislature has seen fit to except from the operation of this law, so far as their own courts are concerned, the city of New Orleans, but that at best could be treated only as an exception which would operate upon the municipal tribunals. Congress has adopted the method which the state laws have given to enforce judgments of this class or nature, and the method thus adopted by congress is not at all affected by this exceptional provision. Let the injunction be refused.

NEW ORLEANS (PETERKIN v.).   See Case No. 11,026.

NEW ORLEANS (RANGER v.).   See Case No. 11,564.

NEW ORLEANS (SALA v.).   See Case No. 12,246.

NEW ORLEANS (UNION BANK v.).   See Case No. 14,351.

NEW ORLEANS (UNITED STATES v.). See Case No. 15,871.

NEW ORLEANS, The (WEEKS v.).   See Cases Nos. 17,353a and 10,181.

NEW ORLEANS & C. R. CO. (CASE v.). See Case No. 2,493.