## HART *v.* CITY OF NEW ORLEANS.*

(*Circuit Court, E. D. Louisiana.* May 27, 1882.)

1. EXECUTION OF JUDGMENTS OF UNITED STATES COURTS.
   The act No. 5 of the legislature of Louisiana of 1870, which prohibits the issuance of writs of execution and *mandamus* against the city of New Orleans, has no effect as to the remedies or judgments rendered in the federal courts.
   *Louisiana* v. *New Orleans*, 102 U. S. 203, distinguished.
   *New Orleans* v. *Morris*, 3 Woods, 115, approved and followed.

2. REVENUE OF MUNICIPAL CORPORATION.
   Moneys due the city of New Orleans from the city street railroad companies, as a *bonus* for privileges granted, never were any portion of the regular revenue of the city, but are the purchase price of property which the city has sold, to be paid in instalments, and are dedicated by law to the payment of either the bonded or floating debt of the city. The leasehold interests of the city in the sugar sheds,—that is, her right to receive as rents 10 per centum of the gross amount of receipts of the sugar shed company,—and her right of reversion in the building, stand upon the same footing.
   *State ex rel. Gas Co.* v. *New Orleans*, 32 La. Ann. 268.

3. LIABILITY OF MUNICIPAL PROPERTY TO SEIZURE FOR DEBT.
   The private property of municipal corporations—*i. e.*, that which is not necessary to the performance of the functions of government—may be seized and sold for the payment of debts.

4. BATTURE (OR ALLUVION) PROPERTY.
   The city of New Orleans is the owner of the land upon which the sugar sheds are built, *jure alluvionis.* The batture in the locality is her property,

---

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

and all of it which is not necessary for the purposes of commerce, and for public purposes, she may sell to private individuals, as she has been doing in years past. This is the same batture property which was in issue in *New Orleans* v. *U. S.* 10 Pet. 662.

On Opposition and Motions to Quash Seizures.

*A. G. Brice* and *E. H. Farrar*, for plaintiff.

*Charles F. Buck*, City Attorney, for defendant.

PARDEE, C. J. The plaintiff, having obtained judgment against the defendant, has taken out execution and garnishment process and seized the amounts due from two of the city street railroad companies as a bonus for the privileges granted, and the interest of the city in the sugar-shed warehouses. The judgment obtained is absolute, except a restriction that in case resort is had to court for a *mandamus* to compel the levy of a tax to pay the judgment, regard shall be had to the legislative limitations on taxation during the several years that the obligations upon which the judgment was founded were contracted. The city has taken these proceedings now under consideration, for the purpose of having the seizures set aside.

1. It is claimed that no execution at all can issue upon the judgment, because (1) the judgment is not absolute, and (2) because act No. 5 of 1870, extra session, prohibits the issuing of executions against the city of New Orleans, at least until after certain registry is made of the judgment. The judgment is absolute condemning the city, and it is the settled jurisprudence of this court that act No. 5 of 1870 has no effect as to the remedies or judgment rendered in the federal courts. This has been determined by all three of the judges authorized to hold this court, in as many distinct cases.

The remarks of the supreme court in *Louisiana* v. *New Orleans*, 102 U. S. 203, to the effect that "so much of said act as requires such filing and registration before a judgment creditor can procure a warrant for the amount due or resort to other means to enforce payment thereof, does not render less effective the pre-existing remedies, and is therefore not in conflict with the contract clause of the constitution," evidently refer to another and distinct question than the practice of the federal courts in aid of judgments rendered by them, and that question was whether the provisions of said act No. 5 impaired the obligations of pre-existing contracts.

The proposition that the legislature of the state of Louisiana can control the execution of judgments in the federal courts in the state involves the very life and jurisdiction of these courts. The one re-

striction of act No. 5 may be reasonable, but how about the rest of the act, which prohibits any execution at all?

Counsel may divide the act and say registration is reasonable, therefore you shall register your judgment; not to have any remedy is unreasonable, therefore you may have execution; but the court cannot so divide the act. We think we must take all or none. If we take all of the act the court can issue neither *mandamus* nor execution against the city in any event, and we would also have to take section 33 of act No. 7 of the same legislature, which provides that the city of New Orleans may have injunctions, appeals, etc., without the affidavits, bonds, or security required from other litigants.

The whole question is very clearly discussed upon principle and authority in the case of *New Orleans* v. *Morris*, 3 Woods, 115.

2. Because the moneys seized are moneys due the city as a part of the revenue of the corporation, applicable to the current expenses of municipal administration. It is not considered that such sums are now or ever were any portion of the regular revenue of the city, even if the last city budget enumerates them. These sums are the purchase price of property which the city has sold, the same to be paid in instalments. The supreme court of the state has decided that such funds are dedicated by law to the payment of either the bonded or floating debt of the city. See *State ex rel. Gas-light Co.* v. *New Orleans*, 32 La. Ann. 268.

3. Because the city's interest in the sugar sheds seized and the squares of ground on which the sheds are built are public things, not seizable or alienable as against the city or the public. The leasehold interests of the city in the sugar sheds—that is, her right to receive as rents 10 per cent. of the gross amount of receipts, and her right of reversion in the buildings—stand upon the same footing as the sums due from the street railroads.

As to the ownership or public character of the squares of ground seized there is no distinction between this case and that of *Morris* v. *New Orleans*, decided by this court and reported in 3 Woods, 115, which it is understood counsel for the city now concede to have been correctly decided, and to be in accordance with the jurisprudence of the state. That case practically decides this, and leaves but little more to be added on the subject.

It is a general principle of law that the private property of municipal corporations—*i. e.*, that which is not necessary to the performance of the functions of government—may be seized and sold for the

payment of debts. See *Holliday* v. *Frisbie*, 15 Cal. 630; *Davenport* v. *Ins. Co.* 17 Iowa, 276; *Louisville* v. *Com.* 1 Duvall, (Ky.) 295; Dillon, Mun. Corp. § 446. Such has always been the law of Louisiana. See *Municipality* v. *Hart*, 6 La. Ann. 570; *McEnery* v. *Pargoud*, 10 La. Ann. 497; *New Orleans* v. *Ins. Co.* 23 La. Ann. 61.

The city of New Orleans is the owner of the land upon which the sugar sheds are built, *jure alluvionis*. The batture in the locality is her property, and all of it which is not necessary for the purposes of commerce, and for public purposes, she may sell to private individuals, as the evidence in this case shows she has been doing in the years past. See *Packwodd* v. *Walden*, 7 U. S. 86, and cases cited in 3 Woods, 115. This batture is the same property which was in issue in *New Orleans* v. *U. S.* 10 Pet. 662. It is to this batture that Gay's refinery, the Bazaar market, and various other pieces of private property belong. Under the laws of the state and the charter of the city, the city has ample power to dispose of this property.

The question now is, "Has the city, by the sugar-shed contracts and other ordinances, destroyed the public servitude which once rested on these squares of ground in favor of everybody?" That is, has not the city, by public act and by her ordinances, voluntarily authorized, as completely as under act No. 133 of 1880 a court could have compelled a corporation to permit, the enjoyment and ownership of a portion of the batture? The exclusive control of that property is vested in the sugar-shed company, and the same is to be conducted as an ordinary public warehouse, for the joint profit of the company and the city. The use of said property is not left to the public, giving every one the "right freely to unload his vessels, to deposit his goods, to dry his nets, and the like." See La. C. Code, arts. 452 to 455.

There is no evidence to show that these squares are necessary for the purpose of commerce. The wharf ordinances define the public landings, and these squares are clearly excluded therefrom—some of them by name. That the city some time in the future may require these squares for public landings is merely to put them in the same category as all the other private property near the river, for that mighty stream frequently goes where it lists.

4. Because act No. 133 of 1880, known as the "syndicate act," turned all the property of the city not required for public purposes over to a syndicate, to be held in trust for the payment of the bonded debt of the city. This proposition is not advanced in the pleadings, and as the syndicate is not before the court claiming anything, it is

not necessary to discuss it further than to express a doubt as to the sufficiency of any such claim, if it shall ever be made.

*The opposition should be dismissed, and it is so ordered.*

His honor, Judge Billings, concurs in this opinion and judgment.