Kansas City, Shreveport & Gulf Railway Co. vs. Smith et al.

No. 13,012.

KANSAS CITY, SHREVEPORT AND GULF RAILWAY COMPANY VS. HEIRS OF
W. W. SMITH ET AL.

SYLLABUS.

1. The finding of a jury of free-holders in an expropriation case, as to the compensation to be paid the owner for property taken in the exercise of the right of *eminent domain*, is entitled to the greatest weight.

2. While in a case showing unreasonable disproportion, one way or the other, of the amount of the award of such jury with what the evidence shows the true value of the property to be, this court will interfere and increase or reduce such award according as the facts and real condition of things may warrant, it is only a clear case of error or mistake, fraud, prejudice or misconduct on the part of the jury that would justify the disturbance of their verdict.

APPEAL from the First Judicial District Court for the Parish of Caddo.—*Watkins, J., vice Land, J.,* recused.

*T. Alexander* for Plaintiffs, Appellees.

*A. H. Leonard* and *D. T. Land* for Defendants, Appellants.

Argued and submitted January 26, 1899.
Opinion handed down May 1, 1899.

The opinion of the court was delivered by

BLANCHARD, J. This is an expropriation suit, and the only issue presented is as to the value of the ground sought to be taken for the use of the railroad.

There are several rival, adverse claimants to the land over which the railway demands the right-of-way, to-wit.: (1) The city of Shreveport, (2) the Vicksburg, Shreveport and Pacific Railway Company, (3) the heirs of W. W. Smith, deceased, and their transferrees.

Plaintiff caused all the claimants to be cited and prayed to be permitted to deposit in court the sum awarded by the jury as the value of the land and damages, subject to the contest of those claiming title.

A jury of free-holders from the vicinage was impaneled, heard the evidence, inspected the premises, decreed the expropriation, and fixed the value of the land taken at $1950.

Defendants had claimed a much larger sum.

From the judgment based on the verdict of the jury, the Smith heirs and their transferrees appeal. The city of Shreveport and V. S. and P. Ry. Company have not appealed.

The strip of land involved, varying from 100 to 115 feet in width, comprises 5 2-10 acres lying in the bed of what was once Silver Lake, and within the limits of the city of Shreveport. The lake during the last thirty years has gradually dried up and its bed filled with deposits from the river water and *detritus* from the higher contiguous land until the same has become susceptible of occupancy. It is still, however, subject to inundation from the Red river, and at the point where the railway crosses, the depth of overflow is several feet.

The lake bed is, too, the natural receptacle of the rainfall and the drainage of the hills which surround it.

Owing to these conditions, and because of the disputed title, the land forming the lake bed remains unoccupied save by negro squatters or ground-renters who inhabit miserable shanties erected by themselves.

The evidence shows this property is not, as yet, fitted either for business or residential purposes.

Consequently, its value is largely speculative.

Under the circumstances now surrounding and controlling it, the property can hardly be said to have for selling purposes any real market value or price, based upon the usual conditions of enquiry, supply and demand.

To make the strip sought by the railroad available for its purposes, huge embankments, or fills, and a long and high trestle have been necessary.

The testimony makes it clear that to put the ground embraced in this strip, and that contiguous to it, in condition for ware-house purposes, or as sites for manufactories, supplying a demand (not shown) for the same for such enterprises, would require a fill with earth to a depth of six or eight feet, which would cost, considering the conditions for obtaining dirt, from 32 to 40 cents per cubic yard. Thus, to raise, by filling, a lot 40 by 125 feet, would involve an expense of from $400 to $500 a lot.

As to the value of the ground embraced in the strip, five witnesses testified for defendants and an equal number for plaintiffs.

Those of plaintiff averaged the value of the five and a fraction acres in the strip at from $300 to $500 per acre; those for defendant averaged it at as many thousands per acre.

Several sales of recent date of near-by property, showing prices, were offered by defendants, and one by plaintiff of an interest in the Silver Lake property, of which the strip in question is part; but we do not consider that any of these sales, owing to widely differing conditions and to peculiar circumstances existing, shown by the evidence, furnish any criterion, even remotely proximate, by which to judge of the value of the ground sought to be expropriated. And this must have been the view taken by the jury. By their verdict, they fixed upon $350 per acre as the value of the land and damages.

The trend of the evidence was to show that the Silver Lake property was benefited, not damaged, by the location of the railroad track on it, and, consequently, it is likely what the jury allowed was really what they considered the value of the land.

Nor are we impressed with the contention of defendants that as the negro ground-renters pay a dollar or more per month for their small holdings in the lake bed, it furnishes a criterion for appraising the land at a much higher value than that determined by the jury. These are an undesirable class of tenants, the evidence showing that the collection of not more than two-thirds of the revenues from such sources can be depended upon.

The ground-renters on this lake bed are hardly more than squatters, acknowledging to hold for and from the parties who put them there, or authorized them to settle there. The huts they occupy are hardly more than temporary structures of their own erection, most of them not even approaching to the importance of an ordinary plantation negro cabin. Theirs is a precarious tenure—nothing to hold them if they choose to go, and irresponsible as to the obligation of tenancy they may have assumed.

The jury of free-holders after hearing the evidence, viewed the premises.

Their conclusion as to the proper compensation to be paid defendants is entitled to the greatest weight.

While in a case showing unreasonable disproportion, one way or the other, of the amount of the award of a jury in an expropriation suit with what the evidence shows the true value of the property to be, this court will interfere and increase or decrease such award ac-

cording as the facts and real conditions of things may warrant, it is only in a clear case of error or mistake, fraud, prejudice or misconduct on the part of the jury that we would feel justified in disturbing their verdict.

In R. R. Co. vs. Frank, 39 La. Ann. 707, it was held that:—"In an expropriation proceeding for a right of way the verdict of a jury of the vicinage, composed of land owners, and presumed to be familiar with the value of the land sought to be expropriated, will not be disturbed by this court, unless it is found to be inconsistent with the proof in the record, or entirely unsupported by the evidence."

In Cable Co. vs. Railway Co., 43 La. Ann. 522, this doctrine was approved in the following language:—"It has long been held in this State that the jury of free holders, authorized by our laws to act in expropriation proceedings, have to some extent, the character and authority of experts, supposed to have some personal knowledge of the matters submitted to them, and authorized to rely on their own opinions as well as the testimony adduced before them. Their verdicts are, indeed, subject to review by appeal, and may be amended when manifestly inadequate or excessive; but they are entitled to great respect and will not be interfered with except in case of gross or manifest error."

See also R. R. Co. vs. McNeeley, 47 La. Ann. 1298; 12 La. Ann. 500; 44 La. Ann. 178; 46 La. Ann. 1273.

We are constrained to hold that the situation here does not warrant the court in concluding that gross or manifest error characterizes the verdict of this jury, nor that fraud, prejudice or error perverts their finding.

Judgment affirmed.

Mr. JUSTICE MONROE takes no part, as he was not a member of the court when the case was submitted.