(70 South. 418)

No. 20219.

CITY OF SHREVEPORT v. SIMON et al.

(Dec. 13, 1915.)

*(Syllabus by the Court.)*

EMINENT DOMAIN ☞262 — EXPROPRIATION —REVIEW—VALUE OF PROPERTY—CONFLICTING EVIDENCE.

There being a wide diversity of opinion among the witnesses in this case as to the value of the property sought to be expropriated, for the widening of an avenue, we find no reason to think that we should be more likely to reach a just conclusion upon that subject than were the property holders of the vicinage, constituting the jury before whom the case was tried, or than was the trial judge who resides in the neighborhood.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 681–686; Dec. Dig. ☞ 262.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the City of Shreveport against J. C. Simon and others. From judgment for plaintiff, defendants appeal. Affirmed.

The following is the sketch referred to in the opinion:

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellants. Lewell C. Butler, City Atty., of Shreveport, for appellee.

MONROE, C. J. Defendants appeal from a verdict and judgment awarding Simon $1,875, and his codefendant, Bluestein, $975, as the value of certain lots, or parts of lots, having their side lines on Southern avenue in the city of Shreveport, and which the city is seeking to expropriate for the widening of that thoroughfare. It appears from the evidence that over the site of what is now called Southern avenue (see "Sketch" hereto annexed) there was, for many years, a road which was used as a common highway, and was so regarded. A litigation arose concerning the title, however, between the city and the plaintiffs herein (in one suit) and the city and Goodrich and others (in another suit) ; plaintiffs claiming the land lying to the eastward of a line running north and south through the middle of Southern avenue (as it is now sought to be established) and Goodrich and others claiming the land lying to the westward of that line. While that litigation was pending on appeal, Goodrich and others sold their interest to the Steere Home Construction Company, and their suit was dismissed, pursuant to an agreement, between the city and the purchaser, to the effect that the purchaser would dedicate a strip of land 30 feet wide, lying immediately west of the line above mentioned, for the purposes of the avenue (to be established), and that the city, on its part, in the event of its being cast in the pending suit between it and Simon and others would at once purchase or expropriate from them a similar strip, lying immediately to the eastward of that line. Plaintiffs had, in the meanwhile, granted a perpetual right of way over the strip thus mentioned to the Shreveport Traction Company for a single track railroad, and, the city desiring to open and pave "Southern avenue" to a width of 60 feet, an agreement was entered into between it and the plaintiffs to the effect that the work of paving should proceed, with-

out prejudice to the rights of either party, and, in the event of the city's being cast in the pending suit, that it should at once purchase the property in dispute, or expropriate it, and, in case the expropriation should become necessary, "the price and damage to be based upon the value of the property at the time of the expropriation."

In view, probably, of the agreements thus mentioned and other arrangements, the Traction Company built a double track road through the middle of the proposed avenue, one track lying on plaintiff's side of the center line, and the other lying on the other side, upon the land dedicated by the Construction Company; and the city proceeded with the paving, and paved both sides, thus furnishing an avenue, 60 feet wide, with a double track passenger road occupying about 20 feet of that width. Thereafter the city was cast in its litigation with plaintiffs, and, being unable to agree upon the price that should be paid for their land, instituted this suit for its expropriation. The land sought to be expropriated consists of parts of lots "one" in blocks 1, 6, 7, and 12, respectively, and of lots 20, in blocks 6 and 7, respectively. Those lots, as laid off, measure, each, 40 feet front, on certain streets which head in (at right angles) to Southern avenue, by a depth of 125 feet, and are each bounded on one side by Southern avenue, and on the other side by a lot of similar dimensions. The defendant Simon owns the lots "one" in blocks 1, 7, and 12, and also the adjoining lots. He formerly owned lot "one" and the adjoining lot in block 1, but he sold the adjoining lot to Mr. Ledbetter, and, with it, a 10-foot strip off of lot "one." The other defendant Bluestein owns lot 20, with the adjoining lot, in block 6, and lot 20 in block 7; the adjoining lot being owned by his codefendant. It will thus be seen that, in each of the three, out of the four, instances in

which his property is to be taken, the expropriation will leave Simon a strip of land, 10 feet in width by 125 feet in depth, which he can add to an adjoining lot, owned by him and measuring 40 by 125 feet, thereby giving it a measurement of 50 by 125 feet, and that, in the other instance (lot "one" of block 1), having already sold a strip 10 feet in width therefrom to Ledbetter, the entire piece remaining will be required for the purposes of the avenue. Bluestein owns the lot adjoining his lot 20, in block 6, and his codefendant owns the lot adjoining Bluestein's lot 20 in block 7.

A number of witnesses, dealers in and owners of real estate, were examined and were called on to consider, from every conceivable angle, the question of the value of the property to be taken and of the damages to that which remains. The fact that the Traction Company has been granted a perpetual right of way over lots 1 and 20 in blocks 12 and 7, and has been allowed to lay its tracks and operate its road (which amounts to a grant) over lots 1 and 20 in blocks 6 and 1, has naturally entered very largely into the calculation. The stipulation, in the agreement with the city, that the expropriation (in the event of failure to agree upon the price) should be based upon the value of the property, *at the time of such expropriation,* was greatly to the advantage of the plaintiffs; since at that time the property had become greatly enhanced in value by reason, mainly, as we think, of the fact that a double track passenger railroad had been built, and the paving had been completed, on what was certainly to become in law, as it was in fact, one of the main highways of the city. But, although the city, the Traction Company, and the owners of the property constituting the new subdivision had thus done all that they could to make the property attractive and valuable, their efforts necessarily involved some sacrifice. The city had the paving to pay for, and is now called on to pay for the opening of the avenue; the Traction Company very likely found its road unprofitable at first; and the plaintiffs, in granting the right of way over the lots which were to become part of the avenue, and for which they are now asking a price, whilst they thereby enhanced the value of the other lots in the subdivision, of which they owned, and still own, a large number, came near destroying the value of the particular lots in question, for no one can reasonably pretend that a lot measuring 40x125 feet is particularly attractive when one-fourth of its width, for the whole length, is occupied by a railroad track upon which cars are constantly being operated. One cannot, however, eat one's cake and have it, and, though the amount which the jury (of property holders) and the trial court have awarded plaintiffs for the 30-foot strips which are expropriated is much less, *in proportion,* than their other lots have been selling for, plaintiffs should comfort themselves with the reflection that the other lots would not have brought such good prices, but for the sacrifice of the value of the lots here in controversy, by granting to the Traction Company the use of them in perpetuity. As the matter stands, when the time came for the city to expropriate, it found the lots thus occupied, and, taking them so incumbered, cannot reasonably be expected to pay the price of unincumbered lots. There is a wide diversity of opinion among the witnesses as to their present value, and we find no reason to think that we should be more likely to arrive at a just conclusion upon that subject than were the property holders of the vicinage, constituting the jury before whom the case was tried, or than was the trial judge, who is referred to in the testimony as occupying a residence on Southern avenue in that neighborhood. New Orleans, etc., R. Co.

v. Frank, 39 La. Ann. 707, 2 South. 310; Postal Tel. Co. v. Louisville & N. R. Co., 43 La. Ann. 522, 9 South. 119; Railway Co. v. Rabasse, 44 La. Ann. 178, 10 South. 708; Railroad Co. v. McNeely, 47 La. Ann. 1298, 17 South. 798; Railway Co. v. Morere, 48 La. Ann. 1273, 20 South. 733; Kansas City, etc., R. Co. v. Heirs of Smith, 51 La. Ann. 1079, 25 South. 955; City of New Orleans v. Steinhardt, 52 La. Ann. 1043, 27 South. 586.

It is therefore ordered that the judgment appealed from be and the same is affirmed.

PROVOSTY, J., concurs in the decree.