No. 7661.

STATE EX REL. N. O. GASLIGHT COMPANY VS. MAYOR AND COUNCIL OF NEW ORLEANS.

When the law vests a public officer with a discretion to do or not do a thing, a mandamus will not lie to control him.

The franchise or exclusive privilege of running horse-cars through the streets of New Orleans is properly within the meaning of section 10 of Act No. 30 of 1876, and the City Council has the right to appropriate the amount realized by sale thereof to the redemption of the bonded debt, as directed by said section.

APPEAL from the Fourth District Court, parish of Orleans. *Houston,* J.

John and W. S. Finney for relators :

First—The claim is reduced to a judgment. The duty to provide for

its payment is perfect. 29 A. 661 ; Dillon on Municipal Corporations, 2d ed. sec. 686, p. 776, sec. 685 ; 8 Otto, 392.

Second—A creditor fully secured should not be permitted to exhaust another fund to the detriment of a creditor who can only be paid out of that fund. 2 Bouvier's Law Dictionary, p. 551, *verbis* Substitution in Chancery Practice ; 2 Story's Equity Jurisprudence, section 1227 ; Adam's Equity, 272, side-paging and notes ; Aldrich vs. Cooper, 8 Vesey, Jr., 395 ; 2 McLean, C. C. R. 490 ; Trimmer vs. Bayne, 9 Vesey, Jr., 211 ; 2 Brockenborough's C. C. R. 267 ; 1 Hopkin's Chan. Rep. 460.

But the tenth section of the premium-bond law has no application to the money in question. That money does not proceed from the sale of property. The city does not own and never did own any property in the streets along which the right of way is granted. Streets are public things. R. C. C. 454. " Public things are those, the property of which is vested in a whole nation, the use of which is allowed to all the members of the nation." R. C. C. 453. Their destination cannot be changed without the consent of the sovereign. 4 Martin, 2 ; 9 Peters, 224 ; 2 Hennen's Digest, pp. 1566, 1567. The city never had any property in the streets in question, and could sell none. The nature of the act done by the city in granting the franchises to the railroad is fully explained in the case of Brown vs. Duplessis and the City, 14 An. 842.

" The selling of this right of way is not an alienation or appropriation of a portion of the public streets for private uses, any more than the licensing of omnibuses or hacks for a specified period is an alienation or appropriation of the public streets." *Ibid.* 843. On the next page the power to grant the franchises is deduced from the following provisions in the City Charter:

It says, " The Mayor and Common Council shall have *power and authority* to make and pass such by-laws and ordinances as are *necessary and proper*, and are not contrary to the Constitution and laws of the United States or this State : first, etc. * * *; second, to regulate and make improvements to the streets, public squares, wharves, and other property. * * * Twelfth, to make regulations for the proper government of carts, drays, carriages, omnibuses, and other vehicles of every description, which run in the streets, or anywhere within the limits of the city, and to determine through what streets the same shall pass." Revised Statutes of 1856, sec. 51, pp. 368, 370. *Vide*, also, C. C. 859 ; 18 La. 284 ; Drake vs. the Hudson River Railroad Company, 7 Barbour's Supreme Court Reports, 524.

Third—It is no answer to the mandamus, that the defendants since its service have placed themselves in a position to evade or defy the authorities of the court. State ex rel. Carondelet Canal and Nav. Co. vs. the City, 30 An. 710 ; United States ex rel. Ranger vs. the City, not reported ; C. P. 843 ; High on Extraordinary Remedies, sections 572 to 576 inclusive ; United States vs. Supervisors, 2 Bissell, 77.

If nothing else can be done, they must levy a sufficient tax, up to the limit permitted by the act of 1870. If they persist in contumacy, the court will persist in punishing. C. P. 308, 843.

E. Howard McCaleb for respondents :

First—Property under our law includes franchises. Gaslight Co. vs. Board of Assessors, 31 An.

Second—Relators are not entitled to the mandamus. Current expenses are not entitled to special taxation.

———

The opinion of the court was delivered by

SPENCER, J. Relator is a judgment creditor of the city for $113,-368 85 for balances due for gas furnished the city in the years 1875, 1876, 1877, and 1878. This judgment was rendered 13th June, and duly registered according to provisions of Act 5 of the extra session of 1870, on 23d October, 1878. Act 5 aforesaid prohibits execution against the city, provides for registering judgments against it, and directs them to be included in the next annual budget, and paid in the order of their registry out of any moneys in the treasury appropriated to that purpose.

The right of way and franchises of the City Railroad Company being about to expire, in January and July, 1880, the City Council advertised the same for sale, including the right of reversion of the equipments of said road, which belonged to the city upon paying their estimated value. The various rights, privileges, and franchises were adjudicated to the City Railroad Company itself, as the highest bidder, for the sum of $630,000 cash, which sum was paid into the city treasury in October, 1879. Relator institutes this proceeding to compel the City Council to include that sum in the budget for 1880, and apply it to the payment of registered judgments, including the one held by relator. The City Council resist this demand on various grounds, one of which is, we think, good.

The tenth section of Act No. 30 of the General Assembly, approved March 26, 1876, (commonly known as the Premium-Bond Act) provides : " That no city property *of any kind* shall hereafter be *sold* or *conveyed,*

*in any manner*, except the proceeds be applied to the reduction of the bonded or floating debt."

It is manifest that it is discretionary with the Council to apply the proceeds of the sale or conveyance of such property either to the bonded or floating debt ; and therefore a mandamus will not lie to compel the application of the funds to one rather than to the other. When the law vests a discretion in the officer to do or not do a thing, the writ will not lie.

If, therefore, the $630,000 received from the City Railroad Company be the proceeds of the sale or conveyance of property of any kind, its application to the redemption or reduction of the bonded debt by the Council was legal and proper, as the act leaves it discretionary to which class of debts it shall be applied.

The language used by the tenth section, " No city property *of any kind* shall be sold or conveyed, in any manner, except the proceeds be applied," etc., gives to the word property its broadest and most generic signification. It cannot be denied that the city has the right of selling or otherwise conveying the privilege or franchise of running cars through the streets of New Orleans. 14 An. 842. That privilege or franchise is a thing of value, and we have held that it is a proper subject of taxation. N. O. and Carrollton R. R. Co. vs. Board of Assessors, not yet reported. See, also, N. O. Gaslight Co. vs. Board of Assessors, 31 A. 475, where the authorities are referred to at length. It is equally certain that this right of running cars through the streets is vested in the city ; otherwise it could not cede or sell it to another. It is therefore, we think, a right which possesses value, and, in this sense, would fall within the meaning intended by the words " any property." By the sale or conveyance in question the city divested itself of this right and vested it in the City Railroad Company, *quoad* certain streets.

Moreover, the city possessed the right of reversion, i. e. the right of taking at an estimation all the property and equipments of the City Railroad Company, on expiration of its original contract. This right, which was evidently one of value, was also surrendered and conveyed with the franchise and right of way, and entered into and made part of the thing sold.

The manifest purpose of the tenth section of the Premium-Bond Act, was (in order to make it acceptable to the creditors) to make available for their redemption, in addition to the five-mill tax, all the means of income possessed by the city, outside of those usual and customary annual revenues immemorially applied to its current expenses. We think, therefore, that the City Council are not obliged to carry said sum of $630,000 into the budget of 1880, or apply it to the judgment or floating debt of the city ; that in using it for reduction of the bonded

debt, the Council exercised a discretion vested in it by law, and not sub-ject to control by the writ of mandamus.

The judge *a quo* made the mandamus peremptory, to the extent of ordering relators' judgment and all judgments registered prior thereto to be placed on the next annual budget, and to provide for their payment in their order, and to exhaust the power of taxation vested in the city to accomplish that end. In other respects the mandamus was refused.

The judgment appealed from is correct, and it is affirmed with costs.

Rehearing refused.