COTTRELL v. MILLARD COUNTY DRAINAGE DIST.
et al.

No. 3681.   Decided June 23, 1921.   (199 Pac. 166.)

DRAINS—INTEREST NOT CONSIDERED RELATIVE TO AMOUNT OF BONDS
ISSUABLE FOR IMPROVEMENTS. Interest to accrue on bonds is no
part thereof, within Comp. Laws 1917, § 2071, authorizing a
drainage district for purpose of improvements to issue bonds to
the amount of benefits assessed.

Original proceeding by F. W. Cottrell against the Millard
County Drainage District and others.

PETITION DISMISSED.

*Soule & Spalding,* of Salt Lake City, for plaintiff.

*J. A. Melville, Jr.,* of Salt Lake City, for defendants.

GIDEON, J.

The defendant Millard County drainage district No. 4 is
a quasi municipal corporation organized under the provi-
sions of title 26, Comp. Laws Utah 1917. The other de-
fendants are the officers of that district. Plaintiff is the
owner of the lands located within the boundaries of such
drainage district. By this proceeding he seeks a writ pro-
hibiting the defendants from offering for sale or selling cer-
tain bonds of the district in the sum of $150,000.

To the complaint or affidavit the defendants have de-
murred. The grounds of demurrer are that the affidavit
does not state facts sufficient to constitute a cause of action,
nor facts sufficient to entitle plaintiff to any relief whatever.
No objections are made, nor, in view of the record, can be
made, as to the regularity of the proceedings leading up to
the organization of the drainage district. Neither is any
complaint urged against the regularity of the elections held

to determine whether the bonds of the district should be issued.

The drainage district was organized in the year 1918. Thereafter the supervisors of the district, after organizing as a board of supervisors, and as required by the provisions of said title 26, examined the lands within the district to determine the damages and benefits that would accrue to each piece or parcels of land by reason of the construction of the drainage system. The board of supervisors assessed each tract of land within the district in accordance with the benefits to accrue to said lands, and also made allowances for damages to each parcel of land adjudged to be damaged. Said supervisors prepared a benefit assessment roll of all the lands in said district, setting forth the name and address of each landowner of land' in said district, the description of the land, the damages which the land would sustain, if any, from the construction of the drainage works, the benefits per acre that would accrue to the lands, and the total in benefits that would accrue to each parcel of land as a result of the construction of the proposed drainage system. The benefit assessment roll was, by the said supervisors, transmitted to the board of county commissioners of Millard county, and a date set for hearing objections and equalizing and finally determining the amount of benefits that would accrue to each tract of land from the construction of the said drainage system. It was determined by the commissioners, after a regular hearing, that the total benefits to be levied and assessed against all of the lands in the district amounted to the sum of $637,670.

Thereafter a petition was filed with the county commissioners, asking such commissioners to call a special election of the landowners and those entitled to vote in the district to determine whether the supervisors should issue bonds in the sum of $310,000 to acquire the necessary money to construct the drainage system. It appears that at that election a majority of the qualified electors authorized the issuance of said bonds. Bonds were thereafter sold and the drainage system partially constructed. The amount realized from the

sale of the first issue of bonds was insufficient to complete the drainage system. Another petition was filed with the county commissioners in the year 1920, requesting said commissioners to call a special election to determine the further issue of bonds in the sum of $150,000. That election was regularly called, and a majority of the qualified electors again voted in favor of the issue of bonds. The supervisors, unless restrained, now propose to issue those additional bond for the purpose of completing the drainage system, and the sale and issue thereof is what the plaintiff is attempting to prohibit by this proceeding.

It is the contention of plaintiff that no authority is found in the act authorizing the board of supervisors to levy a tax against the lands in the district in excess of the benefits determined by the supervisors at or prior to the construction of the drainage system; that in this case the total benefits have been fixed at the sum of $637,670; that the district has already issued bonds in the sum of $310,000 payable at the end of 20 years; that such bonds, together with the accumulated interest, would, within that time, amount to approximately the sum determined as the total benefits to accrue to the lands of the district. It is argued that by reason of such facts the district and its officers are without authority to issue bonds in excess of such amount as will, together with the interest, aggregate the total benefits. It is conceded in the argument that, if the interest on the first issue of bonds in the sum of $310,000 is not to be included in determining the amount of bonds the district may issue, then the application for a writ should be denied.

In order to determine the questions presented it is necessary to refer briefly to the provisions of the act itself. Section 2053 of title 26 makes it the duty of the board of supervisors, immediately after their appointment, among other things, to—

"examine all the land proposed to be drained or protected and the lands over or upon which the work is proposed to be constructed, and determine: (a) * * *; (b) the probable cost of the work mentioned in the petition, including all incidental expenses, and the cost of proceedings therefor; (c) the probable annual cost of

keeping the same in repair after the work is completed; (d) * * *; (e) what lands will be benefited by the construction of the proposed work, and whether the aggregate amount of benefits will equal or exceed the cost of constructing such work, including all incidental expenses, costs of proceedings, and damages. * * *."

Section 2055, as amended by chapter 41, Laws Utah 1919, provides:

"The board of supervisors shall, on or before the first Monday in March of each year, prepare a statement and estimate of the amount of money to be raised by taxation within said district for the purpose of constructing canals, drains, drain ditches, and other works, and maintaining the same; liquidating district warrants and notes and paying interest thereon, paying the interest on the bonded indebtedness of the district; creating a sinking fund for redeeming such bonds. * * *"

Section 2060, as amended by the same chapter, provides:

"The board of supervisors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act. A debt or liability incurred in excess of the express provisions of this act shall be and remain absolutely void. * * *"

Section 2071, as amended, provides, and the section before amendment also provided, that whenever the board of supervisors deems it expedient it shall have power, for the purpose of constructing drains, etc., and making other improvements, or for the purpose of serving the public health or welfare, to issue bonds of the district, to run not less than 5 years nor more than 40 years and to bear interest at 6 per cent. per annum, to be called "drainage bonds." It is further provided that before issuing these bonds a special election must be called by the county commissioners and held, and the bonds authorized by a majority of the landowners and qualified electors of such drainage district. It is also provided that the terms and the time of paying bonds so issued shall be fixed by the board of supervisors. Such bonds shall be for the benefit of the district authorizing the same and shall bear the name and number of such district. It is further provided as follows:

"The board of supervisors shall keep a record of the bonds issued and sold or otherwise disposed of, and such record shall also show the lands embraced in said district. In no case shall the

amount of bonds exceed the benefits assessed.  Each bond issued shall show expressly upon its face that it is to be paid by a tax assessed, levied, and collected on the lands within the drainage district.  Said board of supervisors shall, by resolution, provide for the issuance and disposal of such bonds and for the payment of the interest thereon, the creation of a sinking fund for the ultimate redemption thereof, and for the date and manner of the redemption of said bonds.''

There are other duties enjoined upon the board of supervisors in this section, but the same are not material here.

Section 2072, as amended, provides that whenever such district bonds are issued they shall constitute a lien upon all the lands and improvements within the boundaries of the district ''to the extent of the total benefits, assessed and equalized, and not in excess thereof.''

It is argued on the part of the plaintiff that by section 2060, supra, the board of supervisors is limited in the amount of debt or liability to be incurred to the benefits that the lands within the district will receive by reason of the construction of the drainage system and that the benefits are determined as provided in the act.  All of the provisions of the act must be construed together, keeping in mind the object sought to be accomplished.  It is a matter of common knowledge in this state that much of the valley land is practically worthless for agriculture without drainage.  Much of the land that has been in cultivation and irrigated since the early settlement of the state has become so saturated with water that it is necessary to drain the land in order to grow fruit trees and raise other crops.  It is a fact equally well known that to levy a sufficient tax in any one year to construct a drainage system would work a hardship, and one that would result in the defeat of the very object sought to be accomplished by the enactment.  The only feasible way to meet the expenses of constructing irrigation or drainage systems is by the issuance of bonds, so that the payments may be extended over a series of years.

Moreover, in our judgment, the provisions of the act, and especially of section 2071, supra, answer the plaintiff's contention.  That section gives the board of supervisors power,

when in the judgment of the members thereof it is expedient, to issue bonds for the construction of drain canals, etc. It also limits the amount of such bonds in no uncertain language as follows: ''In no case shall the amount of bonds exceed the benefits assessed.'' The converse of that proposition must be true: That so long as the amount of the bonds does not exceed the benefits assessed the issuance of such bonds is within the province of the board of supervisors.

The contention of plaintiff, in its last analysis, is simply this: The supervisors determine, as by the act provided, the benefits each landowner will receive from the construction of the drainage system. Bonds are issued. The system is completed. The landowner has received the full benefit to his land and he enters into the enjoyment and use of the same. By the provisions of said title 26 the landowners may have from 5 to 40 years, as may be determined by the board of supervisors, in which to pay for the benefits. Yet he is to be taxed nothing, if the contention of plaintiff is right, for the use and enjoyment of such benefits, save the actual cost of the same, and is to be given a period of not less than 5 years nor more than 40 years in which to pay a debt for which he has received, presumably at least, full benefit.

That such was never the thought or intention of the Legislature is not only apparent from the language of the act itself, but from the purpose sought to be accomplished by the enactment. It was provided in section 2071 of the act, as found in Comp. Laws Utah 1917, that any property owner may pay the full amount of the benefits assessed against his property before such bonds are issued and received a receipt in full therefor. For some reason not apparent that clause is omitted from the enactment of 1919. Be that as it may, there is ample authority in the act to authorize the board of supervisors to issue bonds aggregating the amount of the benefits to be received, and to levy a sufficient tax to pay the annual interest on such indebtedness and to create a sinking fund to redeem the bonds at maturity. The authorities are all to the effect that municipalities, in determining the debt limit, are not required to consider interest on such indebted-

ness thereafter to accrue. All taxes, or, at least, all special taxes such as authorized by the act under question are justified upon the theory that the property owner receives in return or consideration for such tax equal value in the improvement to his property. It has never been considered in this state that, in determining the amount of bonds authorized to be issued by any municipality for a sewer system, water system, or electric lighting system, the interest to accumulate on such bonds should be included. The rule of construction in such cases, as stated by the Supreme Court of Montana in *Carlson* v. *City of Helena*, 39 Mont. at page 100, 102 Pac. 44 (17 Ann. Cas. 1233), is as follows:

"Much contention is made over the question whether the interest, as well as the principal, of the proposed issue of bonds should be taken into account in determining whether an indebtedness will be created thereby in excess of the 10 per cent. limit authorized by the statute. * * * This contention proceeds upon the theory that, when interest is expressly reserved in the contract, it becomes a part of the debt, and hence, in determining the amount of indebtedness which a city may contract by the issuance of bonds, the interest up to the date of maturity must be added to the principal. * * * Interest is merely an incident to the debt, to be paid from time to time or at the date when the principal falls due, in consideration of the forbearance extended to the debtor, and becomes a part of the debt, or a debt at all, only when it has been earned. If this is not the correct rule, then, as observed by the Supreme Court of Wisconsin in *Herman* v. *City of Oconto*, 110 Wis. 660, 86 N. W. 681, 'most of the cases in the books relating to the ascertainment of municipal indebtedness have been wrongly decided.' The subject has frequently been considered by the courts of last resort in the states having constitutional and statutory provisions similar to ours, supra, and the conclusion reached has been almost invariably against the contention here made [citing numerous cases]. All of these cases rest upon the principal that the authority granted by the Constitution or statute, as the case may be, to contract a debt, refers to the amount of the debt at the date at which it is created, and has no reference to the amounts of interest which accrue thereafter, and thus construe the fundamental law according to the sense in which the terms 'debt' and 'obligation' are used in the language of the common people."

To the same effect is the opinion of the Supreme Court of Wisconsin in *Herman* v. *City of Oconto*, 110 Wis. 660, 86 N. W. p. 685.

The contention of the plaintiff is without merit. The petition is dismissed, at plaintiff's cost.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.