## NELSON v. BOARD OF COM'RS OF DAVIS COUNTY et al.

No. 4028. Decided September 14, 1923. (218 Pac. 952.)

WATERS AND WATER COURSES—IRRIGATION DISTRICT ASSESSMENT HELD BASED ON BENEFITS AND LEVY TO COVER DELINQUENCIES LIMITED BY STATUTE. Under Laws 1919, c. 68, as amended by Laws 1921, c. 73, tax levied against property in irrigation district to meet its expenses and pay interest and sinking fund, is controlled by benefits received, and owner cannot be assessed for pro rata share of delinquencies of other owners in previous years except to extent of 15 per cent., which the county commissioners are authorized to add to levy for that purpose.[1]

Original application by James E. Nelson, for a writ of prohibition, directed to the Board of County Commissioners of Davis County, Utah, and others.

PEREMPTORY WRIT ISSUED.

*Ray & Rawlins,* of Salt Lake City, for plaintiff.

*Frank A. Johnson,* of Salt Lake City, amicus curiæ.

GIDEON, J.

This is an original proceeding in this court asking for a writ of prohibition against the defendants.

Defendants Winegar, Holt, and Stevenson are county commissioners of Davis county, and are charged with the duty of levying a tax against the property within the boundaries

---

[1] *Lundberg* v. *Irr. Dist.,* 40 Utah, 83, 119 Pac. 1039.

of the defendant Bonneville irrigation district. The defendants Howard, Nelson, and Parkin are the directors of the Bonneville irrigation district, and as such are charged with the duty of preparing a budget each year for the district, and certifying the same to the county commissioners, upon which the commissioners levy the tax against the real property in the district. The remaining defendant is the county assessor of Davis county. He is charged by law with the duty of assessing the property within the district.

The facts appearing in the petition, and upon which the relief sought is based, are stated in the brief of plaintiff as follows:

"The Bonneville irrigation district was organized in 1920, under the provisions of chapter 68, Laws Utah 1919. The district has outstanding bonds providing for annual interest payments, and a sinking fund for the retirement of the bonds. Petitioner is a landowner within the district. For the year 1922 the directors of the district fixed a budget for the purpose of meeting the expenses of the district and paying the interest and sinking fund for the current year 1922. This budget being certified to the county commissioners was, under section 19 of the Irrigation District' Act, increased by 15 per cent. for the purpose of covering delinquencies, and thereby became the basis of the levy. Under the law each acre-foot of water allotted within the district paid the same amount of tax. Petitioner had been allotted .50 of an acre-foot of water, was assessed for the year 1922 upon the above basis $8.07, which tax petitioner paid within the time provided by law. The total assessment for 1922 for all purposes was $122,864.75. Of this amount only $19,573.23 was paid by the landowners. The amount of bond interest for 1922 was $43,500.00 and the amount of the sinking fund for 1922 was $18,125.00. Applying the proper percentage to bond interest and sinking fund collected left a deficit in bond interest collected of $35,526.61 and of sinking fund collected of $14,802.75. To the 1923 budget the board of directors of Bonneville irrigation district have added the two items of 1922 uncollected bond interest and sinking fund and certified the same to the county commissioners. To this budget in due course the commissioners propose to add 15 per cent. and distribute the tax so fixed equally between the allotted acre-feet. It will thus result in petitioner, who paid the full tax assessed against his land for the year 1922, being required to pay a proportion of the uncollected tax for 1922 or suffer his lands to be sold for the tax."

An alternative writ of prohibition was issued. By an-

swer the commissioners admit the allegations of the affidavit and petition, pray for judgment that the alternative writ of prohibition be quashed and that the petition be dismissed. The Bonneville irrigation district and its directors demur to the petition and move to quash the alternative writ.

In that state of the record the matter is submitted to this court for determination. Neither of the defendants has filed any brief or argument. A brief of amicus curiæ is filed in opposition to the making of the writ permanent. The legal question presented is clearly stated in the brief of amicus curiæ as follows:

"The question at issue in this proceeding is whether or not, under the Irrigation District Act of the state of Utah (chapter 68, Laws Utah 1919, as amended by chapter 73, Laws Utah 1921) a budget can be certified by the directors of an irrigation district, and a tax levied by a board of county commissioners in one year to include the delinquencies of a previous year. In other words, whether a cumulative levy can be made so that the property of one landowner can be made liable for its proportion of delinquencies arising from refusal of others to pay assessments on their lands."

It will be controlling of this case to determine whether the bonded indebtedness of an irrigation district partakes of the nature of a general municipal indebtedness or is severable and partakes of the nature of an indebtedness for local improvements.

Chapter 68, Laws Utah 1919, as amended by chapter 73, Laws Utah 1921, in its main features, is the same as chapter 74, Laws Utah 1909. The objects sought to be accomplished by the two acts are the same, namely, some means of conserving and developing water and applying the same to the arid lands of the state to make them productive. The Legislature, by the acts mentioned, sought to devise some scheme or method to defray the expenses incident to conserving and applying the waters of the state to the irrigation of lands included in a particular locality.

This court, in *Lundberg* v. *Irr. Dist.*, 40 Utah, 83, 119 Pac. 1039, in discussing and answering the argument that the provisions of chapter 74, Laws Utah, 1909, violate the provisions of sections 2 and 3 of article 13 of the state Consti-

tution, which provides that all property shall be "taxed according to its value" and at a "uniform and equal rate," at page 89 of 40 Utah, at page 1041 of 119 Pac., says:

"The answer to this contention is that, in adopting the constitutional provision referred to, it was not intended that it should apply to special assessments. The assessment objected to in this case is not one made under this constitutional provision but is what is usually denominated a special assessment based upon benefits accruing to the land which is assessed."

Moreover, the general spirit of the entire act seems to negative the claim or argument that it was intended by the Legislature that the indebtedness should be an obligation chargeable against all of the property in the district as a general municipal liability.

The method to be followed in the organization of an irrigation district is set out in detail in the first sections of chapter 68, Laws Utah 1919. The machinery may be set in motion either by the Governor of the state, or upon petition of a designated number of owners of lands or holders of title or evidence of title to lands requiring water in a proposed district. It is then made the duty of the state engineer to cause—

"to be made a water survey of all lands within the district for the purpose of determining and allotting the maximum amounts of water which could be beneficially used on such lands. * * * On completion of said survey and allotment, the state engineer shall file with the board of county commissioners with which the petition for the said district is filed, his return of survey and report of allotment."

After the filing of the report of the state engineer, it is made the duty of the county commissioners to cause to be published a notice that a petition for an irrigation district has been filed, and water survey and allotment made. In that notice a date shall be set for hearing applications for exclusion and inclusion of lands and revision of allotments. The commissioners shall then—

"proceed to determine and list the lands by acreage and ownership in each 40 acre legal subdivision to be included in said proposed district, from the petition, and from such applications for the exclusion of lands therefrom and the inclusion of lands therein, as may be made in accordance with the intent of this act."

When this duty is performed, the county commissioners call an election of the landowners in the district for the purpose of determining whether such district shall be organized under the provisions of the act. In this election each landowner is entitled to cast one vote for each acre-foot of water or fraction thereof allotted to the land of such landowner.

By section 18 of the act it is provided:

"It shall be the duty of the county assessor of any county embracing the whole or a part of any irrigation district to assess and enter upon his records as assessor in its appropriate column the assessment of all real estate, to which water has been allotted, exclusive of improvements, situate, lying and being within any irrigation district in whole or in part in such county. The assessor shall assess the lands on the basis of the value per acre-foot of water allotted to the lands within the district; provided, that the board of directors of any such irrigation district may divide the district into units and fix a different value per acre-foot of water in the respective units, and in such case, the assessor shall assess the lands within each such unit upon the same basis of value per acre-foot of water allotted to lands within such unit. * * * Immediately after said assessment shall have been extended as provided by law, the assessor shall make returns of the total amount of such assessment to the county commissioners of the county in which the office of said district is located."

By section 17 it is made the duty of the board of directors of an irrigation district, on or before March 1st of each year, to determine the amount of money required for the current year to pay interest and all maturing installments of principal on all notes, bonds and warrants, and to meet the cost of any construction or reconstruction proposed to be covered by annual assessments and all maintenance, operating and current expense and to certify to the county, commissioners of the county, in which the office of said district is located, such amounts, together with such additional amount as may be necessary to meet any deficiency theretofore incurred.

Section 19 reads:

"It shall be the duty of the county commissioners of the county in which is located the office of any irrigation district, immediately upon receipt of the returns of the total assessment of said district, and upon the receipt of the certificate of the board of directors certifying the total amount of money required to be raised as

herein provided, to fix the rate of levy necessary to provide said amount of money, including the amount required to pay the interest and principal of the bonds of said district as the same shall become due and all payments due or to become due to the United States on contracts accompanying which bonds of the district have not been deposited with the United States as in section 11 provided; and to fix the rate necessary to provide the amount of money required for any local improvement district; also to fix the rate necessary to provide the amount of money required for any other purposes as in this act provided, and which are to be raised by the levy of assessments upon the real property of said district and to certify said respective rates to the county commissioners of each county embracing any portion of said district. In fixing the rates of levy the basis shall be the total assessment returned for the district excluding all amounts assessed against lands held by the county on district tax sales. The rates of levy as above determined shall be increased 15 per cent. to cover delinquencies. For the purposes of said district it shall be the duty of the county commissioners of each county in which any irrigation district is located, in whole or in part, at the time of making levy for county purposes, to make a levy at the rates above specified, upon all real estate in said district within their respective counties. It shall furthermore be the duty of the county commissioners of each county embracing any portion of said district when sitting as a board of equalization for general county taxes to equalize district taxes. All taxes levied under this act are special taxes."

I have thus stated, at some length, the provisions of the act authorizing the organization and providing for the government of irrigation districts, for the purpose of demonstrating that the right to be heard in opposition to or in support of the organization of the district is limited to the allotment of water made to each landowner; that the value to be placed by the assessor in assessing land within the district is controlled by the value per acre-foot of water allotted to each piece of land. The value of the land is in no way considered or controlling in determining the number of votes which a landowner is entitled to cast. A small acreage within the district on which a landowner has his home and other valuable improvements may be worth many times the value of a larger tract upon which no improvements have been made. Nevertheless, the owner of the valuable tract would be entitled to cast such number of votes only as he has acre-feet of water allotted to his land. All general taxes must be

and are based upon the value of the property taxed and must be uniform. It would therefore seem to be conclusive that a tax levied against property in an irrigation district is governed and controlled by the benefits received by each landowner and for that reason a landowner cannot and should not be penalized further than is provided in the act for his pro rata share of delinquencies of other property owners in failing to pay the taxes assessed against their property. The statute also seems to limit the power of the county commissioners to levy any greater amount for delinquencies than 15 per cent. It is provided in the section of the act last above quoted that ''the rates of levy as above determined shall be increased 15 per cent. to cover delinquencies.'' The Legislature recognized the fact that there would be delinquencies, and by the clause quoted seems to have limited the power to meet that condition to a levy of 15 per cent. In the brief of amicus curiæ reliance is had upon the clause found in section 17 of the act, ''and to certify to the county commissioners of the county in which the office of said district is located, said amounts together with such additional amount as may be necessary to meet any deficiencies theretofore incurred.'' If that section authorizes the tax complained of, then the authority given to increase the rate 15 per cent. to cover delinquencies is meaningless, and can serve no purpose, as the authority to levy an assessment for delinquencies would be covered by the clause quoted from section 17. It appears from the affidavit of plaintiff that the county commissioners have added that 15 per cent.

Other Western states have laws similar to ours respecting the organization of irrigation districts. These several acts are substantially the same. The underlying purposes and objects sought are the same in all. The several acts of the different Legislatures follow and are largely based upon the original law enacted in California in 1887 and known as the Wright Act (St. 1887, p. 29). A question the same in principle as the question presented here was considered by the Supreme Court of Colorado in *Interstate Trust Co.* v. *Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123, in which the court held, as stated in the third headnote:

"The words 'such additional amounts as may be necessary to meet any deficiency in the payment of said expenses theretofore incurred,' found in the Irrigation District Act, do not confer any power upon the district to levy a cumulative tax for this purpose, but refer only to prior general expenses; the act providing for payment of unforeseen expenses for which no estimate had been made."

The reasoning of the court in that case appears to us to be sound and, so far as applicable here, is approved. We are also cited to a case from the state of Washington, *State ex rel. Clancy* v. *Columbia Irr. District,* 121 Wash. 79, 208 Pac. 27, in which a result contrary to the holding of the Colorado case is reached. From examination of the Washington law respecting the creation of irrigation districts and the powers of the boards of directors to levy assessments, it will be found that the Washington act differs in several particulars from the Colorado and Utah acts. In section 6437, Remington's Codes and Stats. of Washington, 1915, as amended by Sess. Laws Wash. 1921, p. 448, it is provided:

"The board shall also at the time of making the annual levy, estimate the amount of all probable delinquencies on said levy and shall thereupon levy a sufficient amount to cover the same and a further amount sufficient to cover any deficit that may have resulted from delinquent assessments for any preceding year."

Nowhere in the Washington statute is the taxing power limited to 15 or any other per cent. to cover delinquencies. The language quoted above as can readily be seen, is broader and more comprehensive than the language found in our statute. By express provision power is granted to levy a sufficient amount "to cover any deficit that may have resulted from delinquent assessments for any previous year."

From what has been said it follows that the order of this court should be, and it therefore is, that a peremptory writ of prohibition will issue restraining and enjoining each and all of the defendants from assessing or levying against the lands of plaintiff any tax including any part of the delinquencies upon either the interest on the bonded indebtedness of the district or sinking fund for the year 1922.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.