## CAMPBELL v. MILLARD COUNTY DRAINAGE DIST. NO. 3 et al.

No. 4743.   Decided Aug. 18, 1928.   (269 P. 1023.)

*Tangren & Crafts,* of Delta, for plaintiff.

*Soule & Spalding,* of Salt Lake City, for defendants.

CHERRY, J.

The plaintiff, the owner of an unpaid bond of $500 maturing August 1, 1928, issued by the Millard County drainage district No. 3, in this proceeding applies for a writ of mandate requiring the board of supervisors of the district to prepare a statement and estimate, etc., and certify a tax of $75 per acre on all of the lands in the district, for the purpose of raising money to pay the plaintiff's claim and other indebtedness, together aggregating $600,000, maturing at the same time. Pursuant to the application, an alternative writ was issued, and in response thereto due return has been made to said writ. The application is resisted upon the ground that the proposed levy of taxes will exceed the amount of benefits assessed upon the several tracts of land embraced within the district.

The district was organized November 13, 1917, under Comp. Laws Utah 1917, tit. 26, §§ 2040-2073, and embraced 43,000 acres of land. On June 3, 1918, the assessment of benefits to each tract of land was finally made and determined as provided by law. The benefits so assessed varied with different tracts of land as finally equalized and con-

firmed ranged from $35 to $70 per acre. The total amount of benefits assessed was $2,584,373.68. Thereafter bonds were authorized for $1,000,000, and on August 1, 1918, issued and sold. Later, and during the year 1921, additional bonds, amounting to the principal sum of $440,000, were authorized, issued, and sold. Subsequently the district issued and sold tax anticipation notes for $200,000, to pay previously maturing interest coupons on bonds of the district. Of the indebtedness of the district, $600,000, in which is included a $500 bond owned by the plaintiff, became due and payable on August 1, 1928. The board of supervisors of the district prepared a statement and estimate of the amount of money to be raised by taxation within the district for the year 1928, amounting to $193,000, and levied the amount thereof as a tax upon the lands of the district, and certified the same to the county assessor of the proper county.

Upon the ground that the money thus to be raised will be grossly insufficient to meet the obligations of the district which become due in August 1, 1928, and upon the further showing that taxes levied upon a great portion of the lands of the district are uncollectible, the plaintiff demands and seeks by this proceeding to require the board of supervisors of the district to certify a tax levy of $75 per acre upon all of the lands of the district. Other details of facts need not be stated, because the matter is submitted for decision upon the single question of whether any tract of land of the district may be taxed for a sum exceeding the amount of benefits assessed against it. It is clear upon the record that the proposed tax, if authorized and commanded, will, with the taxes heretofore levied and collected, greatly exceed the amount of the benefits assessed upon the respective tracts of land sought to be taxed.

The plaintiff contends that the indebtedness is a general obligation of the district, and that every tract of land within the district is subject to taxation without limit until the debts and liabilities of the district are paid. The defendants

contend that the maximum limit of taxation of any particular tract of land within the district is the amount of benefits resulting to the land from the improvement, which has been assessed, equalized, and confirmed by the proper authority.

Much is said in argument concerning the legal nature of a drainage district, and claims are made that it is a municipal corporation. We are not concerned here with the legal relationships, as between creditors and the district itself as a corporation. It may be conceded that the district itself is liable absolutely for the indebtedness created, and that any property or assets it owned would be subject to the claims of creditors; but the question here relates to the power of the corporation to levy and collect taxes from individual owners of lands embraced within the district. Assuming that the drainage district is a municipal corporation, its legal power to exact taxes must be found in the law which creates it and defines its powers. The general scheme of the Drainage District Act is to provide for the improvement of lands by draining them, and provision is made for paying the cost of the improvement by taxes levied upon the lands in the proportion that the lands are benefited by the improvement. It is contemplated that the benefits will be sufficient for that purpose. Section 2054 of the act provides that if it is found, after the examination prescribed for the purpose, that the costs and expenses of construction and maintenance and damages accruing are more than equal to the benefits which may inure to the lands in general, the proceedings for organization shall be dismissed. The whole theory of local assessment and taxation for such purpose is that the improvements for which they are levied afford a renumeration in the way of benefits. *McCormack* v. *Patchin,* 53 Mo. 33, 14 Am. Rep. 440. And the foundation of the power to levy a special assessment or tax for local improvements is the benefit conferred upon the owner of the property taxed. 5 McQuillin, Mun. Corps. § 2018, p. 4329. The Supreme Court of

the United States, in *Norwood* v. *Baker,* 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, said:

"The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive."

And on page 279 (19 S. Ct. 191) :

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in * * * excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

Numerous provisions of the act itself (as it stood when the district was organized and its first bonds issued; it has since been amended) indicate conformance with the foregoing legal principles and show a purpose to limit the extent of assessment and taxation of any tract of land to the benefits accruing by the improvement to it. As before seen, the organization of a district is dependent upon the total benefits being at least equal in amount to the cost and maintenance of the improvement. The act prescribes the manner by which the benefits to each tract of land shall be assessed, equalized and finally determined. Section 2055. Provision is made by section 2071 whereby any property owner may pay the full amount of the benefit assessed against his property before bonds are issued and receive a receipt in full. By the same section it is provided that "in no case shall the amount of bonds exceed the benefits assessed." Section 2073 requires the county clerk to make a certified statement on each bond issued "of the total amount of the assessment and rate of interest it bears, pledged for the payment of said bonds and other bonds, if any, issued; the date, number, denomination, and time due of all bonds issued which are a lien upon the assessments, or installments of assessments of the district; when the assessments were confirmed by the county commissioners,

and the number of acres of land in the district against which said assessments were made." The provision in section 2072 of the original act that bonds of the district "shall constitute a lien upon all of the lands and improvements thereon within the boundaries of the district," etc., must be construed together with other provisions, and according to the underlying principle and legal justification of the whole act. When thus viewed, the provision means no more than that, within the limit of benefits legally assessed against it, every tract of land in the district and the improvements thereon are subject to the lien of the bonds.

The act has been amended since the district was organized and its first bonds issued. By section 2054x5 (Laws Utah 1919, chapter 41), it is provided that the assessment of benefits as equalized and finally determined by the board of county commissioners "shall be the basis of lien upon the lands within the district for all district indebtedness," and by section 2072 of the same chapter it is provided that district bonds, etc., "shall constitute a lien upon all of the lands and improvements thereon within the boundaries of the district, to the extent of the total benefits, assessed and equalized, and not in excess thereof. * * *" While these amendments clarify and emphasize the matter referred to, they add nothing, because the act before amendment is capable of no other interpretation than that it was intended to authorize the levy and collection of taxes for district purposes in amount within the limits of the benefits assessed and determined, and that the rule must apply in each individual case as well as the aggregate. To say that one landowner in the district should be taxed beyond the benefits received by him to pay for the default of another offends not only against justice and reason, but is repugnant to constitutional guaranties. See *Nelson* v. *Board*, 62 Utah 218, 218 P. 952. All persons dealing with drainage districts are charged with knowledge of their legal powers and limitations, and the limitation of the liability of any landowner in a drainage district in this state for taxa-

tion for district indebtedness is the amount of benefit accruing to his land, which the statute requires to be determined, and, in the case of bonded indebtedness, certified before the indebtedness is created. To this, in a proper case, may be added interest, as decided in *Cottrell* v. *Millard County Drainage District*, 58 Utah 375, 199 P. 166. This conclusion is supported by *Hanscom* v. *City of Omaha*, 11 Neb. 37, 7 N. W. 739; *Scotts Bluff Drainage Dist.* v. *Scotts Bluff Co.*, 113 Neb. 187, 202 N. W. 455; *Coleman* v. *Eight-Mile Drainage District*, 106 Ark. 22, 152 S. W. 1004; *Barton* v. *Minnie Creek Drainage District*, 112 Ill. App. 640; *People ex rel. Ijams* v. *Meyers*, 124 Ill. 95, 16 N. E. 89.

It follows that the alternative writ heretofore issued should be and the same is, quashed, and the writ of mandate prayed for denied.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.