STATE, by and through STATE LAND BOARD, v. BLAKE et al. (MILLARD COUNTY REALTY Intervener).

No. 5133.   Decided April 6. 1933.   (20 P. [2d] 871.)

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson* and *William A. Hilton,* Deputies Atty. Gen., for plaintiff.

*Tangren & Crafts,* of Delta, for defendants.

*Soule & Spalding,* of Salt Lake City, for intervener.

ELIAS HANSEN, Justice.

In its verified petition filed in this court, plaintiff prayed for a writ of mandamus commanding the defendants to ex-

ecute and deliver releases and discharges of several liens for the payment of all bonded indebtedness and equalized assessments of benefits and taxes upon a number of tracts of land owned by plaintiff in Millard county drainage district No. 3 in Millard county, Utah. An alternative writ was issued commanding the defendants to make and execute the written releases as prayed or in lieu thereof to show cause why they had not done so. Within the time fixed by the writ for the return the defendants answered. The Millard Realty Company was, by an order of this court, permitted to intervene. It filed in the cause a complaint in intervention and also a general demurrer.and an answer to the petition for the writ. Plaintiff filed in the cause a motion to strike the complaint in intervention and a demurrer thereto. Upon the pleadings thus made up the cause was submitted for determination.

It is in substance alleged in the petition for the writ that Millard county drainage district No. 3 was organized in the year 1918; that soon thereafter the district incurred a bonded indebtedness; that in order to pay such bonded indebtedness and to provide for the maintenance and other expenses of the district a tax was levied from year to year upon the lands within the district; that the state of Utah acquired various tracts of land within the district after its organization, which tracts of land are described by metes and bounds in the petition.

That on January 2, 1931, plaintiff applied to and received from defendant W. J. Oppenheimer, secretary of the board of supervisors of Millard county drainage district No. 3, a written statement showing the amount of the unpaid equalized drainage district benefit assessments upon the various tracts of land described in plaintiff's petition; that on January 9, 1931, petitioner presented such written statement and tendered payment to the county treasurer of Millard county, Utah, the total amount of all unpaid equalized drainage district benefit assessments on the tracts of land described in the petition; that the county treasurer accepted the payments so tendered and issued a receipt showing that

all unpaid equalized drainage district benefit assessments were fully paid on each of the tracts of land described in the petition; that one copy of such receipt was presented to and filed with defendant Arthur H. Reeve, treasurer of the Millard county drainage district No. 3; that plaintiff demanded that the board of supervisors of such district execute and deliver releases of the liens on the land described in its petition from the "payment of all the bonded indebtedness now existing against said district and from the payment of any bonds now issued or that may be hereafter issued to refund the same, or any part thereof, and from the payment of any notes or any warrants of the district heretofore issued or that may hereafter be issued in payment of interest on such indebtedness or refunded indebtedness all as provided for by chapter 32, Laws of Utah 1929. That upon presentation of the copies and filing of the above described receipts with the treasurer of said drainage district as required by law, showing payment in full of the unpaid equalized benefit assessments and/or taxes against said tracts of land, it became the duty of defendants herein to issue and deliver to your petitioner a written release as provided for by chapter 32, Laws of Utah 1929." That defendants without just cause or excuse failed and refused to issue the releases to which petitioners are entitled. Plaintiff prayed for an order of this court commanding the defendants to make, execute, and deliver releases of the lands described in its petition from the liens of the bonded indebtedness of the drainage district.

Defendants in their answer admitted generally the facts alleged in the petition but denied that they have, without just cause or excuse, refused to issue the releases. As an affirmative defense defendants alleged:

"That the redemption certificates issued by the County Treasurer of Millard County, showed upon their face that each separate tract of land was redeemed from all delinquent drainage taxes upon the payment by the plaintiff of the sum of $10.00 for each separate tract of land so redeemed. That as a matter of fact the amount or sum of

delinquent drainage taxes against each separate tract of land was in excess of $200.00."

Defendants further alleged that the certificates of sale for the nonpayment of taxes issued against the lands described in the petition have passed out of the hands of the drainage district and into the hands of others who claimed that defendants are without authority in law to issue the releases sought by plaintiff. The fourteen releases prayed for by plaintiff were executed by the defendants and delivered to the clerk of this court. The releases so executed show upon their face that the plaintiff has paid to the county treasurer of Millard county a total of $48,671.60, the same being the total amount of benefits and taxes with accrued interest thereon levied and assessed against the lands described in the petition filed in this cause for a writ of mandamus.

Defendants disclaimed any interest in this controversy and prayed merely that "this court issue such order as shall be just and equitable and according to the laws of the State of Utah."

In its answer and complaint in intervention the intervener in substance alleged: That intervener, Millard Realty Company, is a foreign corporation conducting and authorized to conduct its business in the state of Utah; that on August 1, 1918, the Millard county drainage district No. 3 issued and sold drainage district bonds in the total sum of $1,250,000; that during each and every year from 1919 to 1929, inclusive, drainage taxes have been assessed and levied against each and every tract of land within the drainage district including the tracts of land described in plaintiff's petition; that some of the drainage taxes so levied against the land described in plaintiff's petition became delinquent and were sold for delinquent taxes and certificates of sale were issued therefor to the Millard county drainage district; that on October 25, 1929, Arthur A. Sipfle, Sherwood Green, and George S. Ingraham were the owners of drainage district

bonds numbered 1 to 629, inclusive, each in the principal sum of $500, all maturing on August 1, 1928; that on October 29, 1929, they filed a suit in the United States District Court for the District of Utah for the purpose of recovering a judgment on the bonds so held by them; that on March 19, 1930, a judgment was rendered in such suit in their favor and against Millard county drainage district No. 3 in the sum of $354,756; that the judgment so obtained was assigned to the intervener, Millard Realty Corporation; that on August 27, 1930, execution was issued out of the United States District Court in the above-mentioned cause and the United States marshal for the district of Utah levied upon all of the property of the drainage district subject to execution; that on September 23, 1930, the United States marshal offered for sale and sold to the intervener all of the right, title, and interest of the drainage district in all of the delinquent drainage district taxes and tax sale certificates held by the district against each and every tract of land described in plaintiff's petition; that pursuant to such sale the United States marshal executed and issued to the intervener a marshal's certificate of sale to all of such delinquent drainage taxes and tax sale certificates; that intervener is the holder and owner of the delinquent drainage taxes, drainage tax sale certificates, and tax titles in and to each and all of the tracts of land described in plaintiff's petition; and that the board of supervisors of the drainage district is without legal power to release or discharge the liens upon the lands claimed by the plaintiff. Intervener prays that the petition for a writ of mandate be denied and that the alternative writ heretofore issued be quashed.

In support of the demurrer to the petition for the writ it is urged on behalf of the intervener: That the petition is fatally defective in that it fails to allege that all of the drainage taxes upon plaintiff's land have been paid. It is alleged in the petition that all unpaid equalized drainage benefit assessments have been paid. Under the Drainage Act the basis for the levy of drainage taxes is the

equalized drainage benefit assessments. If the equalized drainage benefit assessments on plaintiff's land are fully paid as is alleged in the petition, there is no longer any basis for a levy of any drainage taxes for the payment of the bonded indebtedness of the district. *Campbell* v. *Millard County Drainage District No. 3*, 72 Utah 298, 269 P. 1023. Under the Drainage Act the levy of taxes is the means provided for the collection of the equalized drainage benefit assessments. The demurrer to the petition is overruled.

Plaintiff urges that intervener's complaint in intervention should be stricken for three reasons, viz.: First, that the interest of the intervener in the subject-matter in litigation is not direct and immediate, but is so remote that it will neither gain nor lose by the direct operation and effect of any judgment that may be rendered in this cause. In support of such contention plaintiff cites *Elliott* v. *Superior Court*, 168 Cal. 727, 145 P. 101; *La Mesa, Lemon Grove & Spring Valley Irr. Dist.* v. *Halley*, 197 Cal. 50, 239 P. 719; and *Caldwell* v. *Guardian Trust Co.* (C. C. A.) 26 F. (2d) 218. Second, that the interest which intervener claims in and to the property in controversy may not properly be litigated in a mandamus proceeding. Reliance in support of that proposition is had on the case of *Elliott* v. *Superior Court*, supra; *Sturner* v. *James A. McCandless Inv. Co.*, 87 Colo. 23, 284 P. 778; *State* v. *State Board of Equalizers*, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362; and *Wright* v. *Jordan*, 192 Cal. 704, 221 P. 915. And, third, that the defendants as supervisors of the drainage district having executed the release prayed for, it follows that this controversy is at an end except to make the writ permanent. The case of *Owens* v. *Colgan*, 97 Cal. 454, 32 P. 519, is cited by plaintiff in support of the third proposition.

In their answer defendants seek to excuse their failure to comply with the writ because of the claim made by the intervener. In its complaint in intervention the intervener sets for the nature of the claim which it asserts against the claimed right of plaintiff. The facts upon which both the

defendants and the intervener rely to defeat the writ are apparently the same. The language of the defendants' answer is general; that of the intervener specific. The interest of the intervener in the subject-matter of this controversy may not be said to be remote within the rule announced in the cases cited by plaintiff. If intervener is the owner of the liens in question, its title thereto may not be clouded by releases thereof in favor of the plaintiff. Plaintiff is not entitled, in this proceeding, to have the writ made permanent unless its right thereto is clear and unquestionable. We are in entire accord with the doctrine announced in the cases cited by plaintiff that a writ of mandamus is not designed to assume the function of an action at law or a suit in equity. It is equally well established that a permanent writ of mandate will not issue when the rights of a third party, who is not before the court, are involved and where such rights may be adversely affected. In such case the party seeking the writ will be required to pursue his remedy in an action at law or a suit in equity. There is, however, no dispute between the parties to this proceeding as to the facts. The questions of law which divide the parties may properly be disposed of in this proceeding. There is no merit to the claim that merely because the defendants have executed the releases prayed for the writ should be made permanent. By the pleadings before us the intervener is in effect an interpleaded defendant. The motion to strike the complaint in intervention is denied.

The principle question upon which the parties divide is: Did the intervener by the levy and sale of the taxes and tax sale certificates acquire such a right to the district drainage taxes and tax sale certificates as to defeat plaintiff's right to redeem its lands with bonds of the drainage district? Plaintiff contends that under the laws of this state a drainage district is a municipal corporation and as such its property and assets are not subject to levy and sale under execution, and that therefore intervener acquired no interest whatsoever in the taxes or tax sale certificates of the

district by reason of the levy and sale relied upon by it for its title. In support of plaintiff's claim that the drainage district is a municipal corporation it cites the following cases: *Croft* v. *Millard County Drainage District No. 1,* 59 Utah 121, 202 P. 539; *Campbell* v. *Millard County Drainage District No. 3,* 72 Utah 298, 269 P. 1023; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 103 P. 207; *San Francisco Savings Union* v. *Reclamation Dist. 124,* 144 Cal. 639, 79 P. 374; *Western Assurance Co.* v. *Sacramento & San Joaquin Drainage Dist.,* 72 Cal. App. 68, 237 P. 59; *Burt* v. *Farmers' Co-op. Irr. Co.,* 30 Idaho, 752, 168 P. 1078; *Malim* v. *Benthien,* 114 Wash. 533, 196 P. 7; *Weatherwax* v. *Grays Harbor County,* 116 Wash. 212, 199 P. 303; *Houck* v. *Little River Drainage Dist.,* 248 Mo. 373, 154 S. W. 739, affirmed in 239 U. S. 254; 36 S. Ct. 58, 60 L. Ed. 266; *State* v. *Albany Drainage Dist.,* 290 Mo. 33, 234 S. W. 339; *State ex rel. Hausgen* v. *Allen,* 298 Mo. 448, 250 S.W. 905; *Wabash R. Co.* v. *South Davies County Drainage Dist.* (C. C. A.) 12 F. (2d) 909; *Anderson* v. *Inter-River Drainage & Levee Dist.,* 309 Mo. 189, 274 S. W. 448, 449; *Sigler* v. *Inter-River Drainage Dist.,* 311 Mo. 175, 279 S. W. 50; *Max* v. *Barnard-Bolckon Drainage Dist.,* 326 Mo. 723, 32 S. W. (2d) 583; *People* v. *Spring Lake Drainage, etc., District,* 258 Ill. 479, 97 N. E. 1042, 1043; *Sternberg* v. *Wakonda Drainage, etc., Dist.* (C. C. A.) 33 F. (2d) 451; *Prichard* v. *Johnson-Toby-Const. Co.,* 155 Tenn. 571, 296 S. W. 17; *Dillon Catfish Drainage Dist.* v. *Bank of Dillon,* 143 S. C. 178, 141 S. E. 274; *Bonneville Irr. Dist.* v. *Ririe,* 57 Utah 306, 195 P. 204; *Parry* v. *Bonneville Irr. Dist.,* 71 Utah 202, 263 P. 751; *La Mesa, Lemon Grove & Spring Valley Irr. Dist.* v. *Halley,* 197 Cal. 50, 239 P. 719; *People* v. *Cardiff Irr. Dist.,* 51 Cal. App. 307, 197 P. 384; *Brown Bros* v. *Columbia Irr. Dist.,* 82 Wash. 274, 144 P. 74; *Peters* v. *Union Gap Irr. Dist.,* 98 Wash. 412, 167 P. 1085; *State* v. *Columbia Irr. Dist.,* 121 Wash. 79, 208 P. 27; *Twohy Bros. Co.* v. *Ochoco Irr. Dist.,* 108 Or. 1, 210 P. 873, 216 P. 189; *Fisher* v. *Pioneer Constr. Co.,* 62 Colo. 538, 163 P. 851. The following cases are cited in support of plaintiff's claim that the property of

a municipal corporation is not subject to levy and sale on execution: Dillon on Municipal Corps. (5th Ed.) vol. 1, p. 468; *Emery County* v. *Burresen,* 14 Utah 328, 47 P. 91, 37 L. R. A. 732, 60 Am. St. Rep. 898; *Weaver* v. *Ogden City* (C. C.) 111 F. 323; *San Francisco Savings Union* v. *Reclamation Dist. 124,* 144 Cal. 639, 79 P. 374; *Hanlon Dry Dock & Ship Building Co.* v. *California Drainage Dist. No. 307* (C. C. A.) 3 F. (2d) 408; *People* v. *San Joaquin Valley Agricultural Ass'n,* 151 Cal. 797, 91 P. 740; McQuillin on Municipal Corps. vol. 3, § 1262, pp. 787-789; also, vol. 6, § 2729, p. 641; *Egerton* v. *Third Municipality of New Orleans,* 1 La. Ann. 435; *Klein* v. *New Orleans,* 99 U. S. 149, 25 L. Ed. 430; *Beadles* v. *Smyser,* 209 U. S. 401, 28 S. Ct. 522, 52 L. Ed. 849; *In the Matter of the State of New York,* 256 U. S. 503, 41 S. Ct. 592, 65 L. Ed. 1063; *Beadles* v. *Fry,* 15 Okl. 428, 82 P. 1041, 2 L. R. A. (N. S.) 855.

It seems to be conceded on behalf of the intervener that a drainage district is a public corporation similar in its nature to a municipal corporation. It is urged, however, in intervener's brief that "the applicant in this case cannot contest nor question the right of the intervener to an execution issued on its judgment in a federal court." Attention is called to section 916, Rev. St. U. S. (28 USCA § 727), which provides that:

"The party recovering a judgment in any common-law cause in any district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are provided in like causes by the laws of the State in which such court is held, or by any such laws which may subsequently be enacted and adopted by general rules of such district court; and such courts may, from time to time, by general rules, adopt such State laws as may be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

Intervener urges that the statute above quoted is only a cumulative remedy and that the federal courts may adopt other remedies and may in proper cases issue execution on judgments against municipal corporations. In support of

such doctrine the following cases are cited: *Boyle* v. *Zacharie*, 31 U. S. (6 Pet.) 648, 8 L. Ed. 532; *Hart* v. *City of New Orleans* (C. C.) 12 F. 292; *Collin County Nat. Bank of McKinley, Tex.* v. *Hughes* (C. C. A.) 155 F. 389; *Kaill* v. *Board of Directors of St. Landry Parish, La.,* 194 F. 73, 114 C. C. A. 151; *Tucker* v. *Hubbert,* 196 F. 849, 117 C. C. A. 365; *Bank of U. S.* v. *Halstead,* 10 Wheat. 51, 6 L. Ed. 264; 25 C. J. 828 and 858, §§ 163 and 190; *Amy* v. *Barkholder,* 11 Wall. 136, 20 L. Ed. 101; 15 C. J. 1161; *Oelrich* v. *Pittsburgh,* 18 Fed. Cas. page 598, No. 10,444; *Hart* v. *City of New Orleans* (C. C.) 12 F. 292; *Louisiana ex rel. Ranger* v. *New Orleans,* 102 U. S. 203, 26 L. Ed. 132; *New Orleans* v. *Morris,* Fed. Cas. No. 10,183, 3 Woods, 115; *State ex rel. New Orleans Gaslight Co.* v. *Mayor, etc., of City of New Orleans,* 32 La. Ann. 268; *New Orleans* v. *U. S.,* 10 Pet. 662, 9 L. Ed. 573; 23 C. J. 355, § 105; *State* v. *Buckles,* 8 Ind. App. 282, 35 N. E. 846, 52 Am. St. Rep. 476; *Clear Water County* v. *Pfeffer* (C. C. A.) 236 F. 183.

The adjudicated cases are all to the effect that a drainage district such as that involved in this litigation is impressed with a public interest. Some courts speak of them as municipal corporations, others as quasi municipal corporations, others as public or quasi public corporations, and still others as governmental agencies of the state. It is not necessary in this case to discuss or determine the exact classification that should be given a drainage district under our Drainage Law. It is sufficient for the purposes of this case to observe that drainage districts under our laws are granted governmental functions. Among the ends sought to be accomplished by the creation and maintenance of a drainage district are to provide for the public health and welfare of those who reside on the lands within the district. Laws of Utah 1919, ch. 41, § 2044, p. 86. The doctrine is also well established by the authorities that property and taxes which are necessary for the use of a drainage district in performing its governmental functions may not legally be taken from a drainage district pursuant to a writ of ex-

ecution. The foregoing cases cited by plaintiff support such doctrine. None of the cases which are cited by the intervener in support of its contention that the property of a drainage district may be levied upon and sold under execution go to the extent of holding that such levy and sale may be had of taxes which are levied for the purpose of providing funds for the performance of the governmental functions of a drainage district. Some of the cases so cited by intervener expressly limit the right of a judgment creditor to a levy and sale of property which is not necessary for the performance of governmental functions. The laws of this state affecting drainage districts contain, among others, the following provisions:

Drainage districts may incur a bonded indebtedness to the extent of the total benefits assessed and equalized. Comp. Laws Utah 1917, § 2071, as amended by chapter 41, Laws Utah 1919, pp. 98-100.

Bonds issued by a drainage district become a lien on all of the lands and the improvements thereon within the boundaries of the district to the extent and not beyond the total assessed equalized benefits of the lands within the district. Comp. Laws Utah 1917, § 2072, as amended by Laws Utah 1921, ch. 47, p. 136.

The board of supervisors of a drainage district shall annually levy against the lands within the district the entire amount required for the purpose of constructing canals, drains, drain ditches, flumes, conduits, bridges, culverts, and other works and for the maintenance of the same; for liquidating district warrants and notes and paying interest thereon; for paying the interest on the bonded indebtedness of the district; for creating a sinking fund for redeeming such bonds; and for the management and control of the drainage system. Comp. Laws Utah 1917, § 2055, as amended by Laws Utah 1919, ch. 41, pp. 94-95.

If the drainage taxes are not paid by the owner or a purchaser at the time the land is sold because of the nonpay-

ment of taxes, the county treasurer shall issue a tax sale certificate to the drainage district for the amount of the delinquent taxes, provided the owner of the land so sold shall have four years in which to redeem the same. Laws Utah 1921, ch. 47, § 2058, as amended by Laws Utah 1925, ch. 109, p. 218.

An owner of land within a drainage district who pays (either in lawful money of the United States or in bonds at par of the district) the total amount of unpaid equalized benefit assessments and taxes against any tract of land shall be entitled to have such land released and discharged from all liability for the payment of any of the then existing bonded indebtedness of the district and any bonds thereafter given to refund the same, or any notes or warrants therefor or that may thereafter be issued for the payment of any interest on such bonds or such refunded bonds and from the payment of any unpaid equalized drainage district assessments of benefits and taxes and from the lien of the benefit assessment roll of the drainage district. Laws Utah 1929, cc. 32 and 33.

It will be noted that the taxes which the board of supervisors are authorized to levy are of three classes, viz.: (1) Taxes levied for the purpose of paying the bonded and other indebtedness of the district; (2) taxes levied for the construction and repair of the drainage system; and (3) taxes levied to pay for the management and supervision of the district. Taxes which are paid for the latter two purposes fall within that class of taxes which are exempt from execution because such taxes are necessary for the performance of the governmental functions of the district. It a judgment creditor may seize on execution taxes which are necessary for additional construction work and for the management and maintenance of a drainage district, then may such judgment creditor by such means destroy the functions of a drainage district. The adjudicated cases are uniform in holding against such doctrine. Moreover, taxes which are levied for one purpose ordinarily cannot be ap-

plied to another purpose. Cooley on Taxation (4th Ed.) vol. 4, § 1819, p. 3572. It follows that the drainage district was not divested of its right, title, and interest in the taxes which were levied for additional needed construction and for the management and maintenance of the district by reason of the alleged levy and sale thereof by the intervener pursuant to the writ of execution. What has just been said concerning such taxes applies equally to the tax sale certificates and tax deeds in so far as they represent unpaid taxes levied for the purpose of securing funds for necessary construction, if any, and for the management and maintenance of the district.

The taxes which were levied for the purpose of paying the bonded indebtedness and the interest thereon stand upon an entirely different basis. The bondholders are entitled to such taxes if and when collected. In the event the drainage taxes become delinquent and the property is sold the bondholders are likewise entitled to their proportion of the proceeds of such sale. It is not necessary to an adjudication of the questions here presented to determine whether or not that part of the taxes which were levied on the lands within the district for the purpose of paying the bonded indebtedness and the interest thereon were or were not subject to levy and sale on an execution issued out of the federal court, and therefore we express no opinion concerning that matter. If it be assumed that the levy and sale vested some right or title in the intervener to a part of the taxes and tax sale certificates here involved, it still remains to be determined whether intervener's right or title foreclosed plaintiff of its right of redemption. It is a general rule of law, in the absence of any statutory provisions to the contrary, that a purchaser at an execution sale acquires such interest, and only such interest, as the judgment debtor possessed at the time of the levy. In the language of 10 R. C. L. § 122, p. 1324, it is said:

"The doctrine of caveat emptor, applies with full force to purchases at execution sales. Generally the purchaser acquires only such an

interest as the judgment debtor possessed, taking merely a quitclaim of the execution debtor's title, without warranty, whether the property is realty or personalty; so that if the judgment debtor has nothing, the purchaser acquires nothing."

At the time of the levy under the execution and at the time plaintiff delivered the drainage bonds to the treasurer of Millard county, the period of four years had not expired since plaintiff's land had been sold for delinquent taxes. Thus within the time fixed by law plaintiff sought to redeem its property in the manner provided by law. Had the title to the delinquent drainage taxes and the tax sale certificates remained in the drainage district, plaintiff would be entitled to the releases prayed for in its petition filed herein. As the interest, if any, acquired by the intervener as a purchaser at the execution sale was no greater than that of the drainage district, it must follow that plaintiff's right to redeem the property was not cut off by the levy and sale.

Nor does the fact that intervener acquired the interest upon which it relies under an execution sale pursuant to a writ of execution issued out of the federal district court preclude this or any court of competent jurisdiction, where the question is raised, from determining the extent and validity of the right so acquired. No claim is made that the relative rights of plaintiff and intervener in and to the taxes and tax sale certificates here involved have been adjudicated or brought in question before the federal District Court or any other court prior to the commencement of this proceeding. It may readily be conceded as contended by the intervener that the rights of the intervener to have an execution issued on its judgment against the drainage district may not be questioned by the plaintiff, but such rule of law does not preclude plaintiff from questioning the title which intervener claims to have acquired by its purchase at the execution sale.

Plaintiff, having paid the total amount of assessed benefits with accrued interest thereon which have been levied

against the land described in its petition, is entitled to have the writ made permanent. Such is the order. The clerk of this court is directed to deliver to the plaintiff the releases and discharges which the defendants have filed in this court. No costs will be allowed either party in this proceeding.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.